[No. A090484. First Dist., Div. Two. Jan. 10, 2001.]

LORETTA MACEDO, Plaintiff and Appellant, v.
RICHARD J. BOSIO, Individually and as Trustee, etc., et al., Defendants
and Respondents.

**[Opinion certified for partial publication.\* ]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.A.

**COUNSEL**

Christopher G. Metzger and Brandford C. Floyd for Plaintiff and Appellant.

Richard D. Rosenberg for Defendants and Respondents.

## Opinion

### HAERLE, J.—

### I. Introduction

This is an action, originally filed in Humboldt County and then transferred to San Francisco, to set aside certain Stanislaus County real property conveyances as fraudulent. The superior court sustained a demurrer to appellant's amended complaint without leave to amend. The basis of its ruling was that the suit was barred by the applicable statute of limitations. We reverse.

### II. Factual and Procedural Background

In September 1986, both appellant Loretta Macedo (hereafter appellant) and respondent Richard J. Bosio (hereafter Bosio) were named as defendants in a Humboldt County breach of contract action; that action (*Redwood Empire Aggregates v. Macedo* (Super. Ct. Humboldt County, 1992, No. 78250)) (action No. 78250) claimed that both were indebted to the several plaintiffs in an amount in excess of $500,000.[1] In June 1992, judgment was entered in that action in favor of two of the plaintiffs and against appellant and Bosio in an amount in excess of $173,000, plus prejudgment interest from 1985. The judgment also required Bosio to pay in excess of $19,000 to certain other plaintiffs.

The judgment remained unsatisfied through December 1998; however, between the time of the entry of the judgment in 1992 and January 1999, appellant paid in excess of $578,000 towards its satisfaction.

In January 1999, appellant filed a motion in action No. 78250 seeking contribution from respondent Bosio. In July 1999, an order was entered granting that motion. Pursuant to it, as of that month Bosio owed appellant in excess of $268,000 plus interest on payments made by appellant in excess of her proportionate share of the overall judgment.

In September and December 1993, Bosio and his wife, respondent Angie Bosio, transferred all their right, title and interest in certain Stanislaus County real properties to yet another defendant and respondent in this action, Bosio Revocable Trust. In July 1999, indeed on the same day the contribution order was entered in action No. 78250, appellant filed her complaint in

---

[1]So asserts the amended complaint in this action, the allegations of which we must accept as true for purposes of evaluating the lower court's ruling sustaining the demurrer.

this action in Humboldt County Superior Court. By stipulation, the action was transferred to San Francisco Superior Court. The complaint contains two causes of action, the first seeking to "avoid fraudulent conveyances" and the second for conspiracy. The named defendants were the two Bosios, both individually and in their capacity as trustees of the Bosio Revocable Trust, and the trust itself.

Respondents jointly demurred to the original complaint in December 1999, contending that the action was barred by the statute of limitations and that the complaint failed to plead "with particularity the requisite elements of a fraudulent conveyance." Appellant voluntarily amended her complaint the following month, and a demurrer to this amended complaint was filed by respondents promptly thereafter. This demurrer did not attack the specificity of either cause of action, but was based exclusively on the contention that the action was time-barred.

Appellant opposed the demurrer and respondents replied to that opposition. The matter was argued before the lower court on February 7, 2000. The argument concentrated entirely on the issue of the statute of limitations. The court took the matter under submission and, the following day, signed the order submitted by respondents sustaining the demurrer without leave to amend.

Judgment was entered in favor of respondents on February 23, 2000, and appellant filed a timely notice of appeal.

### III. DISCUSSION

#### A. The Denial of Leave to Amend*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

#### B. The Issue of the Applicable Statutes of Limitation

■ Appellant's other principal contention, and the one which occupied the bulk of the lower court's attention at oral argument, is that, no matter what the impact of the Uniform Fraudulent Transfer Act (UFTA) statute of limitations (Civ. Code, § 3439.09), it is only one of two such statutes possibly applicable to an action of this sort. The other, says appellant, is Code of Civil Procedure section 338, subdivision (d) (section 338(d)).

To put this issue in context, it should be noted that, in their demurrers to both appellant's original and amended complaints, respondents cited, as the

---

*See footnote, *ante*, page 1044.

statute of limitations which they contended barred the action, Civil Code section 3439.09, subdivisions (a) and (b). Section 3439.09, subdivision (a) (the subdivision effectively at issue) reads: "A cause of action with respect to a fraudulent transfer . . . under this chapter is extinguished unless action is brought . . . [¶] (a) Under subdivision (a) of Section 3439.04, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." Respondents then went on to point out that the challenged transfers in this case occurred in 1993, whereas the present action was not filed until 1999.

In opposition to the demurrer, appellant's counsel argued that Civil Code section 3439.09 was not the only statute of limitations applicable to actions to set aside a fraudulent transfer. Another, she contended and contends here, is section 338(d), which provides a three-year statute of limitations for actions "for relief on the ground of fraud or mistake." And that statute, appellant continues, does not begin to run until a plaintiff obtains a judgment on the underlying debt. In support of this latter contention, appellant cites— and the parties argue mightily over—a recent and very relevant ruling of Division One of the Fourth Appellate District, *Cortez v. Vogt* (1997) 52 Cal.App.4th 917 [60 Cal.Rptr.2d 841] (*Cortez*).

In *Cortez*, the appellate court reversed a trial court ruling granting summary judgment to a defendant on the basis of the four-year statute of limitations in Civil Code section 3439.09. The basis of its ruling was that the UFTA and its remedies are "cumulative" to other remedies available to plaintiffs and not exclusive, and hence whether or not an action to set aside a fraudulent transfer was timely had to be evaluated *both* under section 3439.09, subdivision (c) *and* under section 338(d).

The *Cortez* court started its extensive analysis of the issue as follows: "The language of section 3439.09 appears to be straightforward in its reference to the time 'the transfer was made or the obligation was incurred.' However, legislative material published in connection with the adoption of the UFTA requires a conclusion a creditor has an option to establish creditor status by judgment and thus cause the limitations period to run from the time the underlying judgment becomes final. [¶] As demonstrated in the following discussion, the remedies of the UFTA and its predecessor, the Uniform Fraudulent Conveyance Act, are cumulative to the remedies applicable to fraudulent conveyances that existed before the uniform laws went into effect. As to the preexisting remedies, the California Supreme Court has held that the limitations period begins to run at the time of judgment in the underlying action, but if the creditor is unaware of the fraudulent convey-ance, the limitations period begins to run when the creditor discovers the

fraudulent conveyance. (*Adams* v. *Bell* (1936) 5 Cal.2d 697, 703 [56 P.2d 208] [(*Adams*)], applying Code Civ. Proc., § 338, former subd. 4 [now subd. (d)].)" (*Cortez, supra,* 52 Cal.App.4th at p. 929.)

The Supreme Court case *Cortez* relied upon in coming to this conclusion, *Adams*, antedated not only the current UFTA, but also its predecessor, the Uniform Fraudulent Conveyances Act (UFCA; former § 3439.01 of the Civil Code, Stats. 1939, ch. 329, § 2, p. 1667). Three years before the UFCA was adopted, *Adams* held that a cause of action governed by former section 338, subdivision 4 (now § 338(d)) "would accrue on date of judgment . . . ." (*Adams, supra,* 5 Cal.2d at p. 703.)[3]

The *Cortez* court held that the rule laid down in *Adams* still obtains: "In light of the carry-over of remedies from even before the Uniform Fraudulent Conveyance Act, the consistency of the *Adams* v. *Bell* rule with the legislative history on the UFTA, and the salutary purposes served by obviating the need for a second lawsuit while the underlying action is being pursued, we conclude the *Adams* v. *Bell* rule of accrual at the time of the underlying judgment or later discovery applies." (*Cortez, supra,* 52 Cal.App.4th at p. 930.)

In support of this conclusion, the *Cortez* court went into detail regarding, first, the legislative and decisional background of the UFTA, second, the fact that the *Adams* rule applied both before and during the period (1939-1986) of viability of the UFCA, third, the legislative history of the UFTA, including leading texts relied on by its drafters, and, finally, relevant decisional law from other states. (*Cortez, supra,* 52 Cal.App.4th at pp. 930-937.) It then summed up its conclusions: "In cases such as this where there is an alleged fraudulent transfer made during a pending lawsuit that will establish whether in fact, and the extent to which, a debtor-creditor relationship exists, we conclude the limitation period does not commence to run until the judgment in the underlying action becomes final. The primary bases of our conclusion are: [¶] (a) The contemporaneous legislative adoption of the clear statements of policy and purpose of the UFTA as a cumulative and additional remedy;

---

[3]*Adams* cited, but did not discuss, a case appellant relies upon heavily, *Brown v. Campbell* (1893) 100 Cal. 635 [35 P. 433]. That case held that a cause of action attacking a fraudulent conveyance "did not accrue at the date of the alleged fraudulent conveyance, but only when [the plaintiff] obtained a judgment against his debtor upon which an execution would issue in this state." (*Id.* at p. 644.) Contrary to appellant's suggestion, *Cortez* neither cites nor relies upon *Brown*; however, it does cite and rely upon *Adams* which, as noted, does cite *Brown*. And, contrary to respondents' counsel's suggestion at oral argument (a suggestion not found in his brief to this court), the holding in *Adams* regarding (then) Code of Civil Procedure section 338, subdivision (4), was distinctly *not* dicta. (See *Adams, supra,* 5 Cal.2d at pp. 702-703.)

[¶] (b) The requirement we implement a construction of the UFTA that is uniform with other states' laws; and [¶] (c) The potential of unnecessary litigation if strict time limits are drawn for fraudulent transfer cases in circumstances such as are involved in the present case. We conclude the period of limitations in cases of such pending lawsuits commences to run when the judgment in the underlying action becomes final. [¶] Accordingly, since the 1993 action here was brought well within four years after the time the judgment in the underlying action became final, the action was timely." (*Id.* at p. 937.)

Both sides purport to find solace in *Cortez*. Respondents stress that the fact situation in *Cortez* is distinguishable from that in the instant case because there the alleged fraudulent transfer was made during the pendency of a lawsuit which was reduced to judgment *after* the transfer had been accomplished. They also note that this was also the factual pattern in *Adams*, i.e., there also "the alleged fraudulent conveyance occurred during the pendency of the underlying action establishing the debtor's liability to the creditor . . . ." (*Cortez, supra,* 52 Cal.App.4th at p. 932.) They contrast that fact pattern with this case, where the alleged fraudulent transfers occurred in 1993, six years prior to the initiation of any action to establish liability as between appellant and respondents.

Appellant, for her part, contends that *Cortez*, and particularly its reliance on *Adams*, makes clear that an action attacking a fraudulent conveyance may, notwithstanding Civil Code section 3439.09, be brought within three years after a judgment is obtained against the underlying debtor. Such an action, she argues, must also be evaluated for timeliness under section 338(d).[4] Her suit is timely under that section, she maintains, because her cause of action regarding the fraudulent conveyance did not accrue for

---

[4]Appellant also cites Civil Code section 3439.09, subdivision (c) as supportive of this conclusion. That subdivision provides: "Notwithstanding any other provision of law, a cause of action with respect to a fraudulent transfer or obligation is extinguished if no action is brought or levy made within seven years after the transfer was made or the obligation was incurred." Although, as discussed below, we agree with appellant's basic premise that section 3439.09, subdivision (a) is not the exclusive statute of limitations applicable to actions to set aside fraudulent transfers, we disagree that section 3439.09, subdivision (c) supports that conclusion. We think its meaning is far more limited, to wit, that *even if* belated discovery can be pleaded and proven as suggested in section 3439.09, subdivision (a), in any event the maximum elapsed time for a suit *under either the UFTA or otherwise* is seven years after the transfer. (See *Monastra v. Konica Business Machines, U.S.A., Inc.* (1996) 43 Cal.App.4th 1628, 1645 [51 Cal.Rptr.2d 528].)

We emphasize the words we have in the foregoing sentence because, at oral argument, respondents' counsel suggested that, if section 338(d) was an entirely "cumulative" statute of limitations, a common law action to set aside a fraudulent transfer could theoretically be brought scores of years after the transfer (assuming of course, that it took that long to bring the underlying action and obtain a judgment). We disagree; we think that, by its use of the

section 338(d) purposes until entry of the July 21, 1999, order of the Humboldt County Superior Court responsive to the contribution motion brought by her.[5]

Although both parties stretch things a bit in their respective analyses of *Cortez*, we conclude that appellant is correct. The rule deriving from that case and its reliance on the *Adams* line of authority is unmistakable: the UFTA is not the exclusive remedy by which fraudulent conveyances and transfers may be attacked. They may also be attacked by, as it were, a common law action. If and as such an action is brought, the applicable statute of limitations is section 338 (d) and, more importantly, the cause of action accrues not when the fraudulent transfer occurs but when the judgment against the debtor is secured (or maybe even later, depending upon the belated discovery issue).

Respondent would have us limit the "cumulative remedies" principle of *Cortez* to the fact situation implicated there. They argue that the rule in *Cortez* "does not toll the four year statute of . . . section 3439.09 unless the fraudulent transfer occurs during the underlying creditor's action." That was, indeed, the factual scenario of both *Cortez* and *Adams*, but the overall analysis and reasoning of neither case is limited to that scenario.[6]

---

term "[n]otwithstanding any other provision of law," the Legislature clearly meant to provide an overarching, all-embracing maximum time period to attack a fraudulent transfer, no matter whether brought under the UFTA or otherwise.

[5]Appellant also contends that action No. 78250 was "still pending" in Humboldt County Superior Court when the instant proceeding was filed. This is so, she continues, because the judgment rendered in it had not been satisfied and, under section 883 of the Code of Civil Procedure, that earlier action "remained pending between Macedo and Bosio until at least 30 days after the judgment was satisfied in full or until a timely filed motion for contribution was determined thereafter." We disagree; nothing in section 883 impacts on the finality of a judgment. Humboldt County Superior Court action No. 78250 was appealed to this court and, according to our records (of which we take judicial notice), affirmed on January 20, 1994. Our Supreme Court denied review on April 12, 1994, and our remittitur issued on May 11, 1994. Hence, under section 1049 of the Code of Civil Procedure, the judgment became final as of that date. (See *Southern Public Utility Dist. v. Silva* (1956) 47 Cal.2d 163, 165 [301 P.2d 841]; *McKee v. National Union Fire Ins. Co.* (1993) 15 Cal.App.4th 282, 287-288 [19 Cal.Rptr.2d 286].)

[6]We acknowledge that the language of the "Conclusion" section of *Cortez* can be read as suggesting that its rule applies only to cases "where there is an alleged fraudulent transfer made during a pending lawsuit that will establish whether in fact, and the extent to which, a debtor-creditor relationship exists." (*Cortez, supra,* 52 Cal.App.4th at p. 937.) But all of the analysis preceding that phraseology points to the conclusion that a completely cumulative remedy for a fraudulent transfer exists above and beyond that provided by the UFTA, and that the statute of limitations governing such a remedy is section 338(d). Nothing in that analysis provides a basis for *limiting* that cumulative remedy to those cases in which the fraudulent transfer occurs during the pendency of a lawsuit intended to determine a creditor-debtor relationship. To the contrary, the sum total of the *Cortez* analysis supports the conclusion that

We hold that, under the principle articulated in *Cortez*, the statute of limitations applicable to an action such as appellant's is not just that of Civil Code section 3934.09, but is also section 338(d). Thus, the trial court should, on remand, consider the action's timeliness under that section, as well.

## IV. Disposition

The judgment is reversed. Costs on appeal are awarded to appellant.

Kline, P. J., and Lambden, J., concurred.

---

section 338(d)'s statute of limitations applies equally to litigation, such as this, timely commenced after entry of a court order that first establishes the existence of a creditor-debtor relationship, although outside of the period of limitations established by the UFTA. We thus reject the contention of respondents' counsel (raised for the first time at oral argument) that most of the *Cortez* analysis noted above is "dicta," and that the principle established by that case is applicable only when the fraudulent transfer occurs during the pendency of the lawsuit attempting to establish a debtor-creditor relationship.

We are also cognizant of the fact that an Illinois intermediate appellate court has, recently, rejected the reasoning and holding of *Cortez* and, instead, held that the four-year period provided for in that state's equivalent to our Civil Code section 3934.09, subdivision (a) is applicable without exception to any and all actions to set aside a fraudulent transfer. (See *Levy v. Markal Sales Corp.* (2000) 311 Ill.App.3d 552 [244 Ill.Dec. 120, 724 N.E.2d 1008, 1011-1012].) We will not jump into the middle of the disagreements between our sister court in San Diego and the Illinois court, except to note that (1) the former had the benefit of a significant pre-UFTA decision of our Supreme Court (*Adams, supra,* 5 Cal.2d 697) directly pertinent to the question of what statutes of limitations may be applicable to actions to set aside fraudulent transfers and (2) our Supreme Court unanimously denied review in *Cortez* (see 52 Cal.App.4th at p. 938).