**ROACH**

v.

**LEE, et al.**

**No. ED CV 03–286–RT.**

United States District Court, C.D. California.

May 9, 2005.

Ronald E. Darling, Esq., Jon R. Robertson, Esq., Darling, Robertson & Lee, Santa Ana, CA, for Plaintiffs.

David B. Babbe, Esq., David F. McDowell, Esq., Mark D. Gursky, Est., Morrison & Foerster, LLP, Los Angeles, CA, for Defendants.

PROCEEDINGS: ORDER GRANTING MOVING DEFENDANTS' MOTION TO DISMISS THE SECOND AND FOURTH CLAIMS OF PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6).

TIMLIN, District Judge.

The court, Judge Robert J. Timlin, has read and considered defendants Dong Chan Lee, Dong Bo Lee, Ae Ran Lee, Mi Ja Lee, Mi Hyang Lee, Woong Yeul Lee (collectively, "the Lee defendants"), Kolon Industries, Inc. ("Kolon Industries"), and Oh–Woon Cultural Foundation ("Oh–Woon") (collectively, "Moving Defendants")' motion to dismiss the second and fourth claims of plaintiff Peter Roach ("Plaintiff")'s First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6) ("Rule 12(b)(6)"), Plaintiff's opposition, and Defendants' reply. Based on such consideration, the court concludes as follows:

## I.

## BACKGROUND

### A. Factual Allegations in the FAC

Won Man Lee was the head of the Lee family, one of the wealthiest families in South Korea. Plaintiff is a United States citizen living in California. The Lee defendants were or are directors, officers, and/or controlling shareholders of defendant Kolon Industries and/or officers and directors of defendant Oh–Woon. Both Kolon Industries and Oh–Woon are incorporated in and have their principal place of business in South Korea.

Plaintiff was born in Seoul, South Korea on January 18, 1978. He was born out of wedlock to Won Man Lee and an unnamed younger woman, who named him Dong Koo Lee. The Lee defendants forced his

mother to give up legal custody of him when he was five years old. The Lee defendants also forced him to live in a small closet in their mansion, and to eat and sleep with the servants, under the supervision of an older relative.

In 1983, Won Man Lee passed control of Kolon Industries to his son, defendant Dong Chan Lee. Shortly thereafter, Won Man Lee had a stroke. Together with the other Lee defendants, Dong Chan Lee set out to erase any records of his father's out-of-wedlock children. The Lee defendants falsified Plaintiff's birth records, denied that Plaintiff had any relation to them, and placed him in a Korean orphanage. In 1985, Deanna and Martin Roach ("the Roaches"), an American family, adopted Plaintiff, took him to the United States, and changed his name to Peter Roach. The Lee defendants made this adoption possible through their influence over the orphanage and defendant Holt Children's Services, Inc. ("Holt"), an international adoption agency in South Korea.

After Won Man Lee's death in 1994, employees of Kolon Industries sought out the Roaches. On May 12, 1994, the Roaches had a meeting with these employees, whom the Lee defendants had instructed to give $100,000 to Plaintiff. The Roaches asked whether Won Man Lee was Plaintiff's father and whether Plaintiff had any brothers or sisters, to which the Kolon employees responded in the negative. In exchange for the $100,000, the Roaches signed a written agreement relinquishing the birthright of Plaintiff, who was a minor at the time. Kolon International, Inc. ("Kolon International"), acting on behalf of its parent company, Kolon Industries, wrote a letter thanking Holt International for locating Plaintiff and confirming a $10,000 payment for that service.[1]

In May 2000, Plaintiff contacted a branch office of Kolon Industries in California ("Kolon California"). Plaintiff met twice with the branch's president, H.J. Park ("Park"). At the first meeting, Park agreed to contact defendant Woong Yeul Lee and ask whether Won Man Lee was Plaintiff's father. At the second meeting, Park told Plaintiff that the Lee family records did not indicate that he was a member of their family. Park then tricked Plaintiff into writing a letter to Woong Yeul Lee disclaiming any relationship to the Lee defendants.

Plaintiff later wrote an e-mail and a letter to Woong Yeul Lee inquiring whether any relationship existed between Plaintiff and Won Man Lee. Plaintiff sent a letter to the Lee family defendants through Holt International in Oregon, but received no response. In December 2002, Dae Ryung Song, Woong Yeul Lee's representative and Vice Chairman of Kolon Industries, denied that Plaintiff had an inheritance claim to the Estate of Won Man Lee. Dae Ryung Song stated that he would use the documents signed by Plaintiff and the Roaches to dispute any such claim. Only in December 2002 did Plaintiff cease to believe that the Lee defendants were unaware of his attempts to contact them and of his relationship to Won Man Lee.

Plaintiff would have received one-sixth of Won Man Lee's estate, estimated at $30 million. The Lee defendants used his inheritance to establish Oh–Woon as an alter-ego in 1994 to avoid paying any money they owed to him.

## B. Procedural Background

Plaintiff brought the instant action against Defendants for defrauding him

---

**1.** On December 1, 2001, Kolon International split into three companies-Kolon International, FnC Kolon Corporation ("FnC Kolon"), and Kolon CI Corporation ("Kolon CI"). Defendant Kolon Industries allegedly owns all three companies.

into giving up his legal rights to inherit from the estate of his deceased biological father. Specifically, he stated the following claims in his complaint: (1) intentional misrepresentation, active and constructive fraud, against the Lee defendants only, (2) fraudulent transfer against Moving Defendants, (3) intentional infliction of emotional distress ("IIED") against Moving Defendants, (4) intentional spoliation of evidence against Moving Defendants, and (5) negligence against Moving Defendants. Plaintiff claims $5 million in damages and other relief as the court may deem just and proper.

Defendants brought a motion to dismiss for lack of personal jurisdiction. This court denied the motion to dismiss without prejudice, instructing the parties to engage in discovery on the personal jurisdiction issue.

Plaintiff filed a motion to amend his complaint to add five new defendants: Kolon International, FnC Kolon, Kolon CI, Holt International, and Holt ("newly added defendants"), and to correct misspellings of the parties' names. The court issued an order on September 28 allowing Plaintiff to file his FAC ("September 28 Order"), which alleged the same five claims as his original complaint.

Defendants move the court to dismiss the second and fourth claims of the FAC under Rule 12(b)(6).

## II. ANALYSIS

### A. Legal Standard Governing a Rule 12(b)(6) Motion to Dismiss

Under Rule 12(b)(6), a party may move to dismiss for failure to state a claim upon which relief can be granted. A Rule 12(b)(6) dismissal can be based on either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988). In resolving a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true, as well as any reasonable inferences drawn from them. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). A complaint should be dismissed if the plaintiff cannot prove any set of facts to support a claim that would merit relief. *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1229 (9th Cir.2004).

### B. Second Claim—Fraudulent Transfer

Plaintiff alleges a claim of fraudulent transfer under the California Uniform Fraudulent Transfer Act ("CUFTA"), specifically California Civil Code §§ 3439.04(a)(1) ("Section 3439.04(a)(1)") and 3439.07(a)(1) ("Section 3439.07(a)(1)"), and California common law.[2]

### 1. Fraudulent Transfer Claim Under Section 3439.04(a)(1)

■ In its September 28 Order, this court held that Plaintiff may not amend his complaint to allege a CUFTA fraudulent transfer claim against the five newly added defendants because it was futile due to the seven-year time limit of California Civil Code § 3439.09(c) ("Section 3439.09(c)"). Moving Defendants now contend that Section 3439.04(c) also bars Plaintiff's Section

---

2. While the FAC's cover page lists the fraudulent transfer claim as being brought under Sections 3439.04(a)(1) and 3439.07(a)(1), the actual allegation of the fraudulent transfer claim does not specify under what source of law it is brought. Plaintiff purports to assert fraudulent transfers under both CUFTA and California common law, and this court will consider Plaintiff's claim on each legal theory.

3439.04(a)(1) fraudulent transfer claim against them.

A fraudulent transfer claim under Section 3439.04(a)(1) must be brought "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." Cal. Civ. Code 3439.09(a) ("Section 3439.09(a)"). In addition, Section 3439.09(c) provides that "[n]otwithstanding any other provision of law, a cause of action with respect to a fraudulent transfer or obligation is extinguished if no action is brought or levy made made [sic] within seven years after the transfer was made or the obligation was incurred."

Plaintiff alleges in the FAC that the fraudulent transfer occurred on May 12, 1994. He alleges that he discovered the fraud in December 2002. He filed his complaint on March 13, 2003. Even though he filed his complaint less than one year after discovering the fraud, he filed his complaint more than seven years after the fraudulent transfer. His fraudulent transfer claim under Section 3439.04(a)(1) is therefore barred by Section 3439.09(c).[3]

This court will grant Moving Defendants' motion to dismiss with prejudice Plaintiff's Section 3439.04(a)(1) fraudulent transfer claim against them.

### 2. Fraudulent Transfer Claim Under Section 3439.07(a)(1)

Plaintiff also alleges a Section 3439.07(a)(1) fraudulent transfer claim. The time limits of subsection (a) and (b) of

California Civil Code § 3439.09 do not apply to fraudulent transfer claims brought under Section 3439.07(a)(1). *See* Cal. Civ. Code §§ 3439.09. Section 3439.09(c), however, provides that "[n]otwithstanding any other provision of law," no fraudulent transfer claims can be made seven years after the transfer date. The phrase "notwithstanding any other provision of law" evidences "the legislative intent to override all contrary law." *Klajic v. Castaic Lake Water Agency*, 121 Cal.App.4th 5, 16 Cal.Rptr.3d 746, 751 (2004); *see also People v. Tillman*, 73 Cal.App.4th 771, 86 Cal.Rptr.2d 715, 725 (1999). Since Plaintiff has not brought his Section 3439.07(a)(1) claim within seven years, it is time-barred under Section 3439.09(c). *See Forum Ins. Co. v. Devere Ltd.*, 151 F.Supp.2d 1145, 1150 n. 14 (C.D.Cal.2001) (noting that a fraudulent transfer claim under Section § 3439.07(a) was barred by Section 3439.09(c)).

This court will therefore grant Moving Defendants' motion to dismiss with prejudice Plaintiff's Section 3439.07(a)(1) fraudulent transfer claim against them.

### 3. Fraudulent Transfer Claim under California Common Law

In its September 28 Order, this court held that Plaintiff could amend his complaint to allege a fraudulent transfer claim against the five newly added defendants. Relying on *Macedo v. Bosio*, 86 Cal. App.4th 1044, 104 Cal.Rptr.2d 1, 5 (2001), this court found that the CUFTA did not preclude a common law fraudulent transfer claim and that such a claim was subject to

---

**3.** Plaintiff argues that his Section 3439.04(a)(1) is not barred because "[w]hen a defendant is guilty of having fraudulently concealed the facts on which a cause of action depends, the statute of limitations is tolled until the plaintiff discovers or ought to have discovered those facts." Section 3439.09(a) already provides for a one-year statute of limi-

tations that begins to run on the date that the fraud could reasonably have been discovered, but the Section 3439.09(c) seven-year time limit trumps Section 3439.09(a). After seven years, Section 3439.09(c) eliminates both "the right and not merely the remedy." Cal. Civ. Code § 3439.09, cmt. 1.

the statute of limitations in California Civil Code § 338 ("Section 338"). Section 338 provides that the statute of limitations for a fraud claim is three years and that "[t]he cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud." Since Plaintiff discovered the fraudulent transfers in December 2002 and filed his complaint on March 13, 2003, his common law fraudulent transfer claim was not futile under Section 338 and the amendment was proper.

■ Moving Defendants now contend that Section 3439.09(c) trumps the statute of limitations in Section 338(d) for common law fraudulent transfer claims.[4]

■ In *Macedo*, the California Court of Appeal stated in dicta that Section 3439.09(c) bars all fraudulent transfer claims *"under either the UFTA or otherwise"* if brought "seven years after the transfer." 104 Cal.Rptr.2d at 5 n. 4 (emphasis in original). In other words, even common law fraudulent transfer claims subject to the statute of limitations of Section 338 would be barred by Section 3439.09(c) after seven years. *See id.* Even though this comment is dicta, federal courts sitting in diversity cases must generally follow both the holdings and well-considered dicta of state court decisions. *See Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1141 (9th Cir.2003); *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir.1980).

This court finds that the dicta in *Macedo* is well-considered. The Court of Appeal commented that "by its use of the term '[n]otwithstanding any other provision of law,' the Legislature clearly meant to pro-

vide an overarching, all-embracing maximum time period to attack a fraudulent transfer, no matter whether brought under the UFTA or otherwise." *Macedo*, 104 Cal.Rptr.2d at 5 n. 4. The Court of Appeal is correct that the phrase "[n]otwithstanding any other provision of law" expresses the legislature's intent to override all contrary "statutory and decisional law." *Tillman*, 86 Cal.Rptr.2d at 725; *see also Klajic*, 16 Cal.Rptr.3d at 751. One of the purposes of Section 3439.09(c) is to "mitigate the uncertainty and diversity that have characterized the decisions applying statutes of limitations to actions to fraudulent transfers and obligations." Cal. Civ. Code § 3439.09, cmt. 2. In light of this purpose, it would be inordinate to bar CUFTA fraudulent transfer claims after seven years while allowing common law fraudulent transfer claims to be brought "scores of years after the transfer." *Macedo*, 104 Cal.Rptr.2d at 5 n. 4. The court will follow this well-considered dicta.

Plaintiff argues that California Civil Code § 351 ("Section 351"), which equitably tolls the statute of limitations while a defendant is out of state, brings his claim within the statute of limitations of Section 338 because "Defendants are Korean residents and have never resided in the State of California." As discussed above, the phrase "notwithstanding any other provision of law" is a "term of art" that "expresses a legislative intent 'to have the specific statute control despite the existence of other law which might otherwise govern.'" *People v. Franklin*, 57 Cal. App.4th 68, 66 Cal.Rptr.2d 742, 745 (1997) (quoting *People v. DeLaCruz*, 20 Cal. App.4th 955, 25 Cal.Rptr.2d 202, 207

---

4. This issue was not briefed by the parties in their papers on the motion to amend and not addressed in the September 28 Order. In any event, given "the policy of free amendment of pleadings with extreme liberality" and that "an amendment is 'futile' only if it would

clearly be subject to dismissal," determinations of the legal sufficiency of claims are "more appropriately raised in a motion to dismiss." *SAES Getters S.p.A. v. Aeronex, Inc.*, 219 F.Supp.2d 1081, 1086 (S.D.Cal. 2002).

(1993)). Further, the equitable tolling of Section 351 does not apply here because "it is 'inconsistent with the text of the relevant statute,'" which is Section 3439.09(c) here, *Lantzy v. Centex Homes,* 31 Cal.4th 363, 2 Cal.Rptr.3d 655, 663, 73 P.3d 517 (2003) (quoting *United States v. Beggerly,* 524 U.S. 38, 48, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998)), and also because Section 3439.09(c) extinguishes the "substantive cause of action" as well as the remedy. *Sequoia Prop. & Equip. Ltd. P'ship v. United States,* 1998 U.S. Dist. LEXIS 22703, at *20 (E.D.Cal. March 27, 1998).

This court will therefore grant Moving Defendants' motion to dismiss with prejudice Plaintiff's common law fraudulent transfer claim against them.

In summary, the court will grant Moving Defendants' motion to dismiss with prejudice Plaintiff's second claim for fraudulent transfers.

## C. Fourth Claim—Intentional Spoliation of Evidence

 In their FAC, Plaintiff brings an intentional spoliation of evidence claim against Moving Defendants. They contend that a tort of intentional spoliation of evidence does not exist where the spoliation victim did not know nor should have known of the spoliation until after a decision on the merits of the underlying action.

The California Supreme Court held that there is no tort for "the intentional spoliation of evidence by a party to the cause of action to which the spoliated evidence is relevant [i.e., first-party spoliation], in cases in which ... the spoliation victim knows or should have known of the alleged spoliation before the trial or other decision on the merits of the underlying action." *Cedars–Sinai Med. Ctr. v. Sup.Ct.,* 18 Cal.4th 1, 74 Cal.Rptr.2d 248, 258, 954 P.2d 511 (1998). The Court later held that there was no cause of action for intentional

spoliation of evidence by a third party. *Temple Cmty. Hosp. v. Sup.Ct.,* 20 Cal.4th 464, 84 Cal.Rptr.2d 852, 862, 976 P.2d 223 (1999). The California Court of Appeal extended these decisions to preclude causes of action for negligent spoliation by first or third parties. *See Forbes v. County of San Bernardino,* 101 Cal.App.4th 48, 123 Cal.Rptr.2d 721, 726–27 (2002).

In the instant case, Plaintiff alleges that Moving Defendants intentionally spoliated evidence related to the probate proceedings of Won Man Lee and that Plaintiff did not know nor should he have known about the spoliation until after the decision on the merits of the probate proceedings. California courts have not addressed the issue whether a tort for intentional spoliation of evidence exists "in cases of first party spoliation in which the spoliation victim neither knows nor should have known of the spoliation until after a decision on the merits of the underlying action." *Cedars–Sinai Med. Ctr.,* 74 Cal.Rptr.2d at 258 n. 4, 954 P.2d 511. As a consequence, this court must decide this issue as it believes the California Supreme Court would do. *HS Servs., Inc. v. Nationwide Mut. Ins. Co.,* 109 F.3d 642, 644 (9th Cir. 1997).

To decide this issue, this court must consider whether a tort for intentional first-party spoliation of evidence where the victim did not know and should not have known of the alleged spoliation prior to the termination of the underlying action ("purported tort") "would ultimately create social benefits exceeding those created by existing remedies for such conduct, and outweighing any costs and burdens it would impose." *Cedars–Sinai Med. Ctr.,* 74 Cal.Rptr.2d at 252, 954 P.2d 511. The relevant factors are (1) whether the purported tort contravenes the policy to limit torts arising out of litigation-related misconduct, (2) the existence of non-tort reme-

dies, (3) the uncertainty of the fact of harm in spoliation cases, and (4) the costs imposed by the purported tort. *Id.* at 252, 254, 255, 256, 954 P.2d 511. This analysis must be conducted with respect to the purported tort in general, not based on the specifics of the case at bar. *See id.* at 252–258, 954 P.2d 511; *Temple Cmty. Hosp.,* 84 Cal.Rptr.2d at 856–862, 976 P.2d 223.

### 1. Policy of Limiting Torts Arising Out of Litigation–Related Misconduct

The first factor is whether the purported tort contravenes the policy of limiting torts arising out of litigation-related misconduct. The two main concerns here are whether this purported tort could spawn an endless cycle of litigation and whether it offends the need for the finality of adjudications.

In *Cedars–Sinai Medical Center,* the California Supreme Court warned that endless litigation was one of the dangers of creating a tort such as this one. 74 Cal. Rptr.2d at 252, 954 P.2d 511. Since the spoliation victim would not know and should not have known that evidence was spoliated in the underlying action, the only recourse for the victim would be another lawsuit. In the second lawsuit, spoliation could occur again without the victim's knowledge, spurring yet another lawsuit. *See Temple Cmty. Hosp.,* 84 Cal.Rptr.2d at 858, 976 P.2d 223 ("Indeed, the matter might still continue, for spoliation in the second trial might give rise to yet a third lawsuit."). Although spoliation victims in this situation would not be able to seek sanctions in the underlying action because they were unaware of any spoliation, the California Supreme Court has "recognized that even when sanctions within the lawsuit are not available, a tort remedy may be rejected on the ground that such a remedy would produce endless derivative litigation." *Id.* at 856, 976 P.2d 223. Like perjury, the spoliation of evidence "undermines the search for truth and fairness by creating a false picture of the evidence before the trier of fact," but neither wrong is enough to outweigh the policy against endless litigation. *Cedars–Sinai Med. Ctr.,* 74 Cal.Rptr.2d at 253, 954 P.2d 511.

The California Supreme Court was also concerned about the threat to the finality of adjudications. *Id.* A spoliation victim who did not know and should not have known of the spoliation in the underlying action will always have to bring a new lawsuit to rectify the wrong, resulting to some extent in a retrial of the completed underlying action. *See Temple Cmty. Hosp.,* 84 Cal.Rptr.2d at 858, 976 P.2d 223 ("The spoliation tort not only would provide the disappointed litigant a second opportunity to seek compensation, it would require retrial of the first case in order to permit the plaintiff to demonstrate in what respect the alleged spoliation altered the outcome of the first trial."). The California Supreme Court, however, has frowned upon such an assault on the validity of final judgments, even those tainted by evidentiary misconduct. *See id.; Cedars–Sinai Med. Ctr.,* 74 Cal.Rptr.2d at 252–53, 954 P.2d 511.

This court finds that the first factor weighs against creating the purported tort at issue here.

### 2. Existence of Non–Tort Remedies

The second factor is the existence of non-tort remedies.

Two of the non-tort remedies cited by the California Supreme Court in *Cedars–Sinai Med. Ctr.,* Cal.Rptr.2d at 254, 954 P.2d 511 would not apply in this case. Since the spoliation victim would not know and should not have known about the spoliation before a decision on the merits of the underlying action, the victim would not be able to seek discovery sanctions under California Code of Civil Procedure § 2023. *Cf. id.* The spoliation victim would also not be able to make use of the inference in

California Evidence Code § 413 that "evidence which one party has destroyed or rendered unavailable was unfavorable to that party." *Id.*

Yet, California Penal Code § 135 already criminalizes the spoliation of evidence, which creates an effective deterrent against this wrongful conduct. *Cedars–Sinai Med. Ctr.*, 74 Cal.Rptr.2d at 254, 954 P.2d 511. In addition, the State Bar of California would still be able to impose sanctions, including suspension and disbarment, on attorneys who spoliated evidence. *See id.* at 255, 954 P.2d 511 (referring to Cal. Rules Prof. Conduct, rule 5–220 and Cal. Bus. & Prof.Code §§ 6077, 6106). The possibility of sanctions against lawyers will also affect the spoliation of evidence by clients because "modern civil discovery statutes encourage a lawyer to marshal and take charge of the client's evidence, most often at an early stage of the litigation." *See id.*

The California Supreme Court has clearly expressed a preference for non-tort remedies. *See Temple Cmty. Hosp.*, 84 Cal.Rptr.2d at 857, 976 P.2d 223. Considering the rarity of cases involving the intentional spoliation of evidence, *Cedars–Sinai Med. Ctr.*, 74 Cal.Rptr.2d at 255, 954 P.2d 511, disciplinary sanctions and criminal penalties for the intentional spoliation of evidence will likely be sufficient for deterring this wrongful conduct.

The court finds that this factor weighs against the establishment of the purported tort.

### 3. Uncertainty of Harm in Spoliation Cases

The third factor is the uncertainty of harm in spoliation cases. In spoliation cases, "the fact of harm will be irreducibly uncertain" because "even if the jury infers from the act of spoliation that the spoliated evidence was somehow unfavorable to the spoliator, there will typically be no way of telling what precisely the evidence would have shown and how much it would have weighed in the spoliation victim's favor." *Id.* The jury would have great difficulty assessing the role of the spoliated evidence in the underlying action "[w]ithout knowing the content and weight of the spoliated evidence" and could only speculate about what effect the spoliated evidence would have had on the outcome of the underlying action. *Id.* Whether or not the spoliated victim knew or should have known of the spoliated evidence before a decision on the merits of the underlying action, the "element of causation" and "fact of injury" would be "intractable element[s] of proof." *Temple Cmty. Hosp.*, 84 Cal.Rptr.2d at 860, 976 P.2d 223.

This factor therefore weighs against the recognition of the purported tort at issue.

### 4. Costs Imposed By The Purported Tort

The fourth factor is the costs imposed by recognition of the purported tort. Many of the costs imposed by an intentional spoliation of evidence tort where the victim knew or should have known of the spoliation before a final decision on the underlying action also apply when the victim did not and should not have had that knowledge. First, the uncertainty of harm "would create the risk of erroneous determinations of spoliation liability (that is, findings of liability in cases in which availability of the spoliated evidence would have not changed the outcome of the underlying litigation)." *Cedars–Sinai Med. Ctr.*, 74 Cal.Rptr.2d at 256, 954 P.2d 511. Second, this risk of erroneous determinations "could also impose indirect costs by causing persons or entities to take extraordinary measures to preserve for an indefinite period documents and things of no apparent value solely to avoid the possibility of spoliation liability if years later those

items turn out to have some potential relevance to future litigation." *Id.* Third, "[t]here is also the cost to defendants and courts of litigating meritless spoliation actions," which could arise from evidence that was merely "discarded or misplaced in the ordinary course of events." *Id.* Fourth, "pursuing a spoliation tort remedy in a proceeding separate from the underlying action would result in duplicative proceedings without avoiding the potential for inconsistent results." *Id.* at 257, 954 P.2d 511.

Despite all these costs, it does not seem that recognizing the purported tort at issue would significantly increase "deterrence of the destruction of evidence." *Id.* "[T]he motive and opportunity to discover instances of spoliation are at their greatest during discovery in the underlying action," so "[t]here is no reason to conclude that instances of spoliation that remain hidden during discovery in the underlying action would come to light afterward solely by reason of the existence of a tort remedy." *Id.* at 257–58, 954 P.2d 511.

This factor weighs against creating the purported tort.

In sum, it is this court's conclusion that the California Supreme Court would not recognize an intentional spoliation of evidence tort where the spoliation victim did not know nor should have known of the spoliation until after a decision on the merits of the underlying action. The court, therefore, will grant Moving Defendants' motion to dismiss with prejudice Plaintiff's fourth claim for intentional spoliation of evidence.

### III. DISPOSITION

ACCORDINGLY, IT IS ORDERED THAT:

1) Moving Defendants Dong Chan Lee's, Dong Bo Lee's, Ae Ran Lee's, Mi Ja Lee's, Mi Hyang Lee's, Woong Yeul Lee's, Kolon Industries, Inc.'s, and Oh– Woon Cultural Foundation's motion to dismiss the second and fourth claims of plaintiff Peter Roach's First Amended Complaint pursuant to Rule 12(b)(6) is GRANTED with prejudice; and

2) Moving Defendants shall file an answer to the first, third, and fifth claims of the FAC no later than eighteen days from the date of this order.