Filed 8/5/24

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MACH-1 RSMH, LLC, | |
| Plaintiff and Appellant, | G062330 |
| v. | (Super. Ct. No. 30-2020-01141980) |
| FRANK DARRAS et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Nathan R. Scott, Judge. Affirmed.

Larson, Paul A. Rigali, Tyler J. Franklin and Benjamin Falstein for Plaintiff and Appellant.

Greenberg Gross, Alan A. Greenberg and Claire-Lise Y. Kutlay for Defendants and Respondents Frank Darras and Anthony Ciabattoni.

---

* Only the untitled introductory paragraphs, the Facts, the first paragraph and Part I.A. of the Discussion, and the Disposition are certified for publication. (Cal. Rules of Court, rules 8.1105 & 8.1110.)

Law Office of Frank W. Battaile and Frank W. Battaile for Defendants and Respondents Marc Joseph Spizzirri and 1700 North El Camino Real, LLC.

*      *      *

California's version of the Uniform Voidable Transactions Act (Civ. Code, § 3439 et seq.; UVTA) governs claims for voidable or fraudulent transfers—transfers that invalidly place certain property beyond the reach of the original owner's creditors.[1] Civil Code section 3439.09, subdivisions (a) through (c) provide time limits for claims under the UVTA.[2] As relevant here, section 3439.09, subdivision (c) (section 3439.09(c)) prescribes the following statute of repose: "Notwithstanding any other provision of law, a cause of action under [the UVTA] with respect to a transfer or obligation is extinguished if no action is brought . . . within seven years after the transfer was made or the obligation was incurred." Although the UVTA expressly provides certain remedies, it also preserves other remedies that preexisted the statute. Some courts have referred to voidable transfer actions seeking preexisting remedies as common law actions. In this appeal, we must decide whether section 3439.09(c) applies to so-called common law voidable transfer actions. We hold that it does.

---

[1] As discussed below, the Legislature retitled the former Uniform Fraudulent Transfer Act the UVTA. For simplicity, we use the current title throughout this opinion, except where necessary to distinguish between the different versions of the statute. Among other changes, the Legislature replaced the word "'fraudulent'" in the statute with "'voidable.'" (*Aghaian v. Minassian* (2020) 59 Cal.App.5th 447, 455, fn. 8.) We therefore refer to voidable transfers throughout.

[2] All undesignated statutory references are to the Civil Code.

2

Appellant Mach-1 RSMH, LLC (RSMH) and its parent company Mach-1 Autogroup, LLC (Autogroup) sued Marc Joseph Spizzirri over a failed deal to purchase Spizzirri's auto dealership.[3] Initially, both RSMH and Autogroup prevailed and were awarded over $1.55 million, plus interest. In May 2013, when the companies attempted to enforce the judgment, Spizzirri transferred interests in two properties (the Chrysler property and the Theater property) to third parties. This court later reversed the judgment and remanded the matter for retrial.

In April 2020, while proceedings were still pending on remand, Autogroup brought this action concerning the Chrysler property against Spizzirri and the third-party transferees. It asserted a voidable transfer claim and alleged that Spizzirri had intended to hinder, delay, or defraud his creditors. In April 2022, when it became apparent that RSMH alone—not Autogroup—was about to obtain a favorable judgment in the underlying action, Autogroup sought and later obtained leave to substitute RSMH in as the plaintiff in the voidable transfer action. Respondents, Spizzirri and the third-party transferees, demurred to the amended complaint reflecting this substitution, arguing RSMH's claim was untimely under section 3439.09(c).

The trial court agreed and sustained the demurrer. The court also denied RSMH leave to add a claim concerning the transfer of the Theater property, concluding it was similarly untimely, among other reasons. It later entered a judgment of dismissal.

---

[3] Spizzirri and another person not relevant here owned the dealership through a company they co-owned. Spizzirri's wife was involved in some aspects of the deal and was a party to some of the ensuing litigation, but she is not a party to this case. We refer only to Spizzirri for simplicity.

RSMH challenges the trial court's ruling sustaining the demurrer, maintaining that it brought a common law action and arguing that section 3439.09(c) does not apply to such actions. Alternatively, it contends its claim related back in time to Autogroup's timely filed claim. RSMH also asserts the court abused its discretion by denying it leave to add the Theater property claim.

In the published portion of this opinion, we conclude that section 3439.09(c) applies to purported common law voidable transfer claims. Other cases have reached the same conclusion, reasoning that section 3439.09(c) (or a prior version thereof) was not limited to claims under the UVTA. (*PGA West Residential Assn., Inc. v. Hulven Internat., Inc.* (2017) 14 Cal.App.5th 156, 170 (*PGA*); *Macedo v. Bosio* (2001) 86 Cal.App.4th 1044, 1050-1051, fn. 4 (*Macedo*).) Our analysis differs: we conclude that regardless of whether they seek preexisting remedies, claims asserting a voidable transfer within the scope of the UVTA are claims under the UVTA; thus, section 3439.09(c)'s statute of repose applies to such claims, regardless of their characterization.

In the unpublished portion of this opinion, we conclude that RSMH's Chrysler property claim did not relate back to Autogroup's similar claim, and RSMH's claim was therefore untimely. And we find no error in the trial court's denial of leave to add the Theater property claim because it was similarly untimely. We therefore affirm the judgment.

4

FACTS[4]

I.

THE DEALERSHIP ACTION AND THE FIRST JUDGMENT

In 2008, RSMH agreed to purchase Spizzirri's Honda dealership in Rancho Santa Margarita. Over the course of several months, Autogroup transferred $1.55 million to Spizzirri on behalf of RSMH. Of that sum, $1 million was provided as a "loan"—Spizzirri signed a promissory note in that amount, naming RSMH as the payee. But the entire $1.55 million was to be applied toward the purchase price, and if the deal failed to close, Spizzirri was to repay it to RSMH. Ultimately, the deal fell through, but Spizzirri refused to return the funds to RSMH.

In 2009, Spizzirri sued RSMH and Autogroup, alleging breach of contract and other claims. RSMH and Autogroup filed a cross-complaint, asserting causes of action for fraud and other torts. RSMH alone asserted claims for breach of contract based on the purchase agreement and the promissory note. Following a bench trial, the trial court rejected the cross-complaint's fraud claims but concluded that RSMH and Autogroup were entitled to repayment of the $1.55 million. In December 2012, the court issued a judgment awarding them that sum plus interest. Spizzirri appealed.

II.

THE TRANSFERS

While Spizzirri's appeal of the judgment was pending, RSMH and Autogroup took action to enforce the judgment and, through a court-ordered

[4] The statement of facts is based in part on the allegations in the operative complaint and the proposed fourth amended complaint, which we accept as true for purposes of this appeal. (*Smiley v. Citibank* (1995) 11 Cal.4th 138, 146.)

foreclosure sale, acquired Spizzirri's ownership interest in Auto Orange II, LLC. However, in late May 2013, before RSMH and Autogroup could take over the management of this company, Spizzirri transferred or encumbered two real properties owned by Auto Orange II, the Theater property and the Chrysler property. First, on May 21, Spizzirri transferred the Theater property to the family trusts of his friends and business associates, Frank Darras and Anthony Ciabattoni. Darras and Ciabattoni subsequently transferred the Theater property back to Auto Orange II, only to purchase it in a foreclosure sale days later through a company they owned.

Second, on May 22, 2013, Spizzirri signed a second deed of trust over the Chrysler property in favor of 1700 N. El Camino Real, LLC—which he owned together with Darras, Ciabattoni, and another person—to secure a promissory note for over $3 million. In early 2014, the holder of the first deed of trust encumbering the Chrysler property foreclosed, extinguishing Auto Orange II's ownership interest.

III.

DECISION ON APPEAL AND FEDERAL ACTION

In 2015, this court reversed the judgment in favor of RSMH and Autogroup and remanded for a new trial. (*Family Investment Co. v. Mach-1 Autogroup* (Apr. 3, 2015, G047783, G048082) [nonpub. opn.].) In January 2018, with proceedings on remand ongoing, Autogroup filed a complaint in federal court, asserting causes of action for voidable transfer against respondents and others. Autogroup challenged both the Theater property transfer and the encumbrance of the Chrysler property. Autogroup later amended its complaint to challenge only the Chrysler property transaction. In March 2020, the federal district court dismissed the action for lack of subject matter jurisdiction.

6

## IV.

### INITIATION OF THE STATE COURT VOIDABLE TRANSFER ACTION

In April 2020, while proceedings were still pending on remand in the dealership action, Autogroup brought this action against respondents, asserting a single cause of action for voidable transfer concerning the Chrysler property. It later amended the complaint twice in ways not pertinent here. The second amended complaint alleged, inter alia, that Spizzirri had encumbered the Chrysler property with intent to hinder, delay, or defraud his creditors. It further alleged that but for the second deed of trust, Autogroup would have been able to save the property from foreclosure by refinancing the debt secured by the first deed of trust. In addition to other relief, Autogroup sought compensatory and punitive damages.

## V.

### NEW JUDGMENT IN THE DEALERSHIP ACTION

In February 2021 and April 2022, the trial court issued new statements of decision pertaining to different issues in the dealership action. Overall, the court concluded that Spizzirri's purchase agreement with RSMH and the promissory note in favor of that entity compelled Spizzirri to repay the $1.55 million he received, plus interest. It rejected RSMH and Autogroup's fraud claim and explained that those parties had abandoned all other claims previously asserted. The court later issued a judgment awarding RSMH alone over $3.4 million.

## VI.

### SUBSTITUTION OF RSMH FOR AUTOGROUP IN THE VOIDABLE TRANSFER ACTION AND RESPONDENTS' DEMURRER

In April 2022, Autogroup filed an ex parte application in the voidable transfer action, asking the trial court to substitute RSMH for

Autogroup as plaintiff. Autogroup claimed that its initial counsel in the federal action had erroneously named it, rather than RSMH, as plaintiff, and that its current counsel carried this "clerical error" over to this action. The court agreed that Autogroup had been named in error and granted the application, instructing RSMH to file an amended complaint. On May 18, 2022, RSMH complied, filing a third amended complaint that named it as plaintiff but left the substantive allegations of the second amended complaint largely unchanged.[5] Given the substitution of RSMH for Autogroup, the third amended complaint now alleged that *RSMH* would have been able to refinance the Chrysler property but for the second deed of trust.

Respondents demurred, claiming the third amended complaint was barred by section 3439.09(c)'s seven-year statute of repose. They noted that RSMH filed the third amended complaint about nine years after the challenged encumbrance of the Chrysler property. In opposition, RSMH argued its claim was timely because the third amended complaint related back to Autogroup's initial state court complaint.

VII.

RSMH'S MOTION FOR LEAVE TO ADD A CLAIM CONCERNING THE THEATER PROPERTY

While the demurrers remained pending, RSMH moved for leave to amend the third amended complaint by adding a cause of action relating to the transfer of the Theater property. It provided a proposed fourth amended complaint. In opposition, respondents argued that the request was procedurally improper and that, in any case, section 3439.09(c) would bar the new claim.

---

[5] The third amended complaint also named Autogroup as plaintiff, but the latter was dismissed from the case shortly thereafter.

8

## VIII.

### THE TRIAL COURT'S RULING

Following a hearing, the trial court sustained the demurrers, concluding that section 3439.09(c) had extinguished RSMH's claim regarding the encumbrance of the Chrysler property. In rejecting RSMH's relation-back argument, the court reasoned, inter alia: "[T]he 3rd Amended Complaint adds a new party . . . . While the . . . order allowing the amendment as a procedural matter may have suggested otherwise, it is now clear the change in plaintiffs is more than just the correction of clerical error or confusion over similar names. . . . RSMH confirms it is not seeking the same damages as . . . Autogroup—'[i]t is seeking damages for injuries to itself as the real-party-in-interest that stepped in to the shoes of Autogroup.' . . . [¶] . . . [A voidable] transfer does not necessarily affect all creditors in the same way, especially when the damages flow from a creditor's alleged inability to refinance a property. . . . Not all creditors have the same opportunity to refinance. . . . RSMH is thus a new party with a new claim seeking new damages."

The trial court similarly denied RSMH's motion for leave to amend, concluding, among other things, that section 3439.09(c) had extinguished any claim concerning the Theater property. It later entered a judgment dismissing the action with prejudice. RSMH timely appealed.

### DISCUSSION

RSMH challenges the trial court's dismissal of its action. It argues the court erred by concluding its Chrysler property claim was untimely. And it contends the court abused its discretion by denying it leave to amend so it could add its Theater property claim. As discussed below, we find no error and therefore affirm.

9

# I.

## TIMELINESS OF CHRYSLER PROPERTY CLAIM

RSMH argues the trial court erred by concluding that its claim concerning the Chrysler property was untimely under section 3439.09(c). It contends this provision does not apply to its claim and, alternatively, that its claim relates back to Autogroup's timely filed, similar claim. We reject both arguments and conclude that section 3439.09(c) barred RSMH's claim.

### A. *Statute of Repose under Section 3439.09(c)*

RSMH argues the time limit in section 3439.09(c) applies only to claims under the UVTA and therefore does not apply to its claim concerning the Chrysler property, which it characterizes as a common law claim. Like RSMH, respondents focus their briefing on whether section 3439.09(c) applies only to claims under the UVTA—they argue this provision applies to non-UVTA claims as well. As explained below, we agree that section 3439.09(c) applies only to claims under the UVTA. However, we hold that all claims asserting the elements of a voidable transfer as described in the UVTA—including RSMH's claim—are UVTA claims subject to section 3439.09(c), even if also characterized as common law claims.

#### 1. Governing Principles

##### a. Standard of review and statutory interpretation

"In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory. [Citation.]" (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) "[T]he 'any possible legal theory' standard encompasses a legal theory presented for the first time [on appeal]." (*Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1244.) "Where the demurrer was sustained without

leave to amend, we consider whether the plaintiff could cure the defect by an amendment. The plaintiff bears the burden of proving an amendment could cure the defect. [Citation.]" (*T.H. v. Novartis Pharmaceuticals Corp., supra*, 4 Cal.5th at p. 162.)

When interpreting a statute, we seek to ascertain the legislative intent to effectuate the purpose of the statute. (*Holcomb v. U.S. Bank Nat. Assn.* (2005) 129 Cal.App.4th 1494, 1504.) "We begin by examining the statute's words, giving them a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language 'in isolation.' [Citation.] Rather, we look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision. . . . [Citation.]' [Citation.] That is, we construe the words in question "'in context, keeping in mind the nature and obvious purpose of the statute . . . ." [Citation.]' [Citation.] We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.' [Citations.]" (*People v. Murphy* (2001) 25 Cal.4th 136, 142.)

b. The UVTA generally

From the early history of our state, California law allowed creditors to bring an action in equity to reach assets the debtor conveyed to a third party under certain conditions. (*Kinder v. Macy* (1857) 7 Cal. 206, 207.) Over the years, the Legislature adopted and replaced various statutory frameworks addressing voidable transfers. (See, e.g., 8 Witkin, Cal. Procedure (6th ed. 2024) Enforcement of Judgment, § 546 [discussing 1939 enactment of U. Fraudulent Conveyance Act and repeal of prior statutory provisions].) As relevant here, in 1984, the Uniform Law Commission adopted the model Uniform Fraudulent Transfer Act, and California enacted its

11

version of that uniform law in 1986. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 161 (2015-2016 Reg. Sess.) as amended Apr. 14, 2015, p. 2.) In 2014, the commission amended the model law to address "'a small number of narrowly-defined issues.'" (*Ibid.*) The commission also retitled the model law, naming it the Uniform Voidable Transactions Act. (*Ibid.*) In 2015, the Legislature enacted the UVTA and codified it as a single chapter of the Civil Code.[6]

The UVTA sets forth the elements of a claim challenging the transfer of a debtor's asset.[7] (§§ 3439.04, 3439.05.) Among other circumstances, a transfer is voidable if the debtor made the transfer with "actual intent to hinder, delay, or defraud any creditor." (§ 3439.04, subd. (a)(1).) As relevant here, the creation of an encumbrance on an asset is considered a transfer under the UVTA. (§ 3439.01, subd. (m).) The UVTA specifies certain remedies available to the creditor, including avoidance of the transfer to the extent necessary to satisfy the creditor's claim, an attachment pending litigation of the claim, and a levy of execution once the creditor has

---

[6] As of the time of this opinion, 45 states, the District of Columbia, and the United States Virgin Islands have adopted a version of the model Uniform Voidable Transactions Act or its predecessor. (Uniform Law Commission, The Uniform Transactions Act (2014 Amendments) – A Summary, p. 1, available at <https://www.uniformlaws.org/viewdocument/enactment-kit-89?CommunityKey=64ee1ccc-a3ae-4a5e-a18f-a5ba8206bf49&tab=librarydocuments> [as of July 26, 2024], archived at: <https://perma.cc/PL5F-V34C>.)

[7] Under the UVTA, a "'[t]ransfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, license, and creation of a lien or other encumbrance." (§ 3439.01, subd. (m).) The UVTA also defines the term "'[a]sset.'" (§ 3439.01, subd. (a).)

obtained judgment on the claim.[8] (§ 3439.07.) The UVTA's remedies may also include limited monetary damages against certain transferees. (§ 3439.08.) Importantly, while California law originally required creditors to reduce their underlying claims to judgment before seeking to set aside voidable transfers (*Brown v. Campbell* (1893) 100 Cal. 635, 644), the UVTA allows creditors to maintain a voidable transfer action before obtaining a judgment on the underlying claim (*Cortez v. Vogt* (1997) 52 Cal.App.4th 917, 930-931 (*Cortez*)).

The UVTA did not effect a wholesale repeal of preexisting claims, remedies, and principles related to voidable transfers. Section 3439.12 provides: "Unless displaced by the provisions of this chapter, the principles of law and equity, including . . . the law relating to . . . estoppel, laches, fraud, misrepresentation, . . . or other validating or invalidating cause, supplement

---

[8] Section 3439.07 provides, inter alia: "(a) In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in Section 3439.08, may obtain: [¶] (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim. [¶] (2) An attachment or other provisional remedy against the asset transferred . . . . [¶] (3) Subject to applicable principles of equity . . . : [¶] (A) An injunction against further disposition . . . of the asset transferred . . . . [¶] (B) Appointment of a receiver to take charge of the asset transferred . . . . [¶] (C) Any other relief the circumstances may require.
"(b) If a creditor has commenced an action on a claim against the debtor, the creditor may attach the asset transferred . . . if the remedy of attachment is available in the action under applicable law and the property is subject to attachment in the hands of the transferee under applicable law.
"(c) If a creditor has obtained a judgment on a claim against the debtor, the creditor may levy execution on the asset transferred or its proceeds." (§ 3439.07, subds. (a)-(c).)

its provisions."[9] Because the purpose of the uniform law was to provide a uniform statutory scheme among the states, the UVTA instructs, "This chapter shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it." (§ 3439.13.)

c. The UVTA's filing deadlines under section 3439.09

In section 3439.09, the UVTA sets forth time limitations for creditors' challenges to allegedly voidable transactions:

"A cause of action with respect to a transfer or obligation under this chapter is extinguished unless action is brought pursuant to subdivision (a) of Section 3439.07 or levy made as provided in subdivision (b) or (c) of Section 3439.07:

"(a) Under [certain circumstances], not later than four years after the transfer was made or the obligation was incurred or, if later, not later than one year after the transfer or obligation was or could reasonably have been discovered by the claimant.

"(b) Under [other circumstances], not later than four years after the transfer was made or the obligation was incurred.

"(c) Notwithstanding any other provision of law, a cause of action under this chapter with respect to a transfer or obligation is extinguished if

---

[9] Thus, for example, although the UVTA excludes from its scope property that is generally exempt from liability for debts (§ 3439.01, subd. (a)(2)), it does not preclude a creditor with special rights from asserting a non-UVTA claim to obtain relief from an otherwise voidable transfer of generally exempt property (Assem. Com. on Fin. & Ins., Rep. on Sen. Bill No. 2150 (1985–1986 Reg. Sess.) 5 Assem. J. (1985–1986 Reg. Sess.) p. 8571).

no action is brought or levy made within seven years after the transfer was made or the obligation was incurred."

Section 3439.09(c) is unique to California; no similar provision was included in the filing deadlines of the model uniform laws. (7A pt. II West's U. Laws Ann. (1984) U. Fraudulent Transfer Act, § 9; 7A pt. II West's U. Laws Ann. (2014) U. Voidable Transactions Act, § 9.) At the time the Legislature considered the adoption of the Uniform Fraudulent Transfer Act, "[a] committee of the Business Law Section of the State Bar of California . . . had expressed concern that the limitations period recommended by the Uniform Laws commissioners . . . overlooked future creditors and did not include an 'absolute termination date for creditors to challenge the transfer, especially since it is unknown when a future creditor will discover the fraud.' [Citation.]" (*PGA, supra*, 14 Cal.App.5th at p. 184, italics omitted.) "'[T]o provide certainty for parties dealing with transferees,' the bar committee recommended that 'an *absolute deadline* of ten years be imposed on *any creditor's* right to challenge *any transfer*.' [Citation.]" (*Id.* at p. 184.) "In response, the judiciary committee amended [the relevant bill] to include [section 3439.09(c)'s] seven-year limitation period . . . . [Citation.]" (*Ibid.*)

Based in part on this legislative history, the court in *PGA* held that section 3439.09(c) is a statute of repose, rather than a statute of limitations.[10] (*PGA, supra*, 14 Cal.App.5th at p. 177, 184-185.) "'Unlike an ordinary statute of limitations which begins running upon accrual of the claim, [the] period contained in a statute of repose begins when a specific

---

[10] The court in *PGA* did not decide whether section 3439.09, subdivisions (a) and (b) are statutes of repose (*PGA, supra*, 14 Cal.App.5th at p. 185, fn. 21), and we also do not consider this question.

15

event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted.' [Citation.]" (*Giest v. Sequoia Ventures, Inc.* (2000) 83 Cal.App.4th 300, 305.) And "[w]hereas statutes of limitations affect a remedy, statutes of repose extinguish a right of action after the period has elapsed. [Citations.]" (*PGA*, at p. 177.) Thus, statutes of repose are generally not subject to tolling. (*Id.* at p. 178.)

### d. Caselaw about section 3439.09 and the availability of preexisting remedies

#### (1) *Cortez*

In *Cortez*, the appellate court held that the UVTA's filing deadlines under former section 3439.09, subdivisions (a) and (b) "accommodate a tolling until the underlying liability becomes fixed by a final judgment."[11] (*Cortez, supra*, 52 Cal.App.4th at pp. 919-920.) There, the defendants made a transfer in 1987, while the plaintiff's lawsuit on his underlying claim against them was pending. (*Id.* at pp. 920-921.) In 1990, the plaintiff obtained a favorable final judgment against the defendants. (*Id.* at pp. 922-923.) In 1993, he filed an action to set aside the transfer. (*Id.* at pp. 919, 924.) The trial court granted summary judgment for the defendants, concluding that former section 3439.09's filing deadlines barred the suit because it was not filed within four years of the challenged transfer.

The Court of Appeal reversed, concluding that the suit complied with the UVTA's filing deadlines. It reasoned, inter alia, that the UVTA's remedies were "cumulative to the remedies applicable to fraudulent conveyances that existed before the uniform laws went into effect." (*Cortez,*

---

[11] For present purposes, there is no meaningful difference between former section 3439.09, subdivisions (a) and (b) and the version currently in effect.

16

*supra*, 52 Cal.App.4th at p. 929.) The court noted that caselaw regarding those preexisting remedies held that the limitations period generally began to run at the time of judgment in the underlying action. (*Id.* at pp. 929-930.) It explained that the UVTA gave creditors the option, but did not require them, to maintain a voidable transfer claim before obtaining a judgment on the underlying claim. (*Cortez*, at pp. 930-931.) And according to the court, where a creditor chose to seek "'the older remedy'" of obtaining a judgment first and only then attacking the transfer, "it would be inappropriate to begin the running of the limitations period for the voidable transfer action before the creditor . . . actually obtains the judgment." (*Id.* at p. 931.)

Based on this analysis, the *Cortez* court concluded that the UVTA's filing deadlines under former section 3439.09, subdivisions (a) and (b) had been tolled during the pendency of the plaintiff's claims.[12] (*Cortez, supra*, 52 Cal.App.4th at pp. 919-920, 937.) Because the plaintiff filed his claim within four years of the judgment in the underlying action, his claim was timely. (*Id.* at p. 937.) During its discussion, the court noted that the three-year statute of limitations under Code of Civil Procedure section 338, former subdivision 4 (now subdivision (d)) continued to apply while the 1939 Uniform Fraudulent Conveyance Act was in force (*Cortez*, at p. 933)—only in 1986 did the Uniform Fraudulent Transfers Act add a special filing deadline for voidable transfer claims (Stats.1986, ch. 383, § 2). But the court did not

---

[12] Several courts in other jurisdictions have rejected *Cortez*'s conclusion that the uniform law's four-year filing deadlines ran from the final judgment in the underlying action, opining that it was contrary to the statute's plain language. (*Schmidt v. HSC, Inc.* (Hawaii 2014) 319 P.3d 416, 430 & fn. 24 [discussing *Cortez* and collecting cases].) We do not consider this issue, as the filing deadlines of section 3439.09, subdivisions (a) and (b) are not material to this appeal.

suggest the original three-year period still applied; rather, as noted, it concluded the *UVTA's* filing deadlines had not expired. Thus, under *Cortez*, a claim challenging a voidable transfer within the scope of the UVTA while seeking a preexisting remedy not expressly included in the statute was still subject to the UVTA's filing deadlines.

(2) *Macedo* and *PGA*

A few years after *Cortez*, the court in *Macedo, supra*, 86 Cal.App.4th at page 1051 purported to rely on that case to hold that (1) a creditor could bring a "common law action" to set aside a voidable transfer, and (2) such an action would be subject to the three-year statute of limitation under Code of Civil Procedure section 338, subdivision (d). In *Macedo*, the challenged transfers were made in late 1993. (*Macedo*, at p. 1046.) In mid-1999, the creditor initiated litigation on her underlying claim, obtained a favorable final order, and filed an action seeking to void the 1993 transfers. (*Id.* at pp. 1046-1047.) The trial court dismissed the voidable transfer action, concluding it was time barred. (*Id.* at p. 1047.)

The Court of Appeal reversed, invoking *Cortez* to conclude that the creditor brought a common law action that was subject to the statute of limitations under Code of Civil Procedure section 338, subdivision (d) (plus tolling), not the four-year filing deadline in former section 3439.09, subdivision (a). (*Macedo*, at p. 1051.) According to the court, *Cortez*'s rule was "unmistakable: the [UVTA] is not the exclusive remedy by which fraudulent conveyances and transfers may be attacked. They may also be attacked by, as it were, a common law action. If and as such an action is brought, the applicable statute of limitations is [Code of Civil Procedure] section 338[,

18

subdivision ](d) . . . ."[13] (*Macedo*, at p. 1051.) The *Macedo* court did not discuss the elements of a common law action challenging a debtor's transfer.

In reaching its conclusion that Code of Civil Procedure section 338, subdivision (d) governed the creditor's claim, the *Macedo* court rejected the defendants' contention that this rule would allow a creditor to bring a common law action "scores of years" after the transfer. (*Macedo, supra*, 86 Cal.App.4th at p. 1050, fn. 4.) It pointed to the version of section 3439.09(c) applicable at the time and reasoned it would preclude such an inordinate delay because *that* subdivision applied to all voidable transfer claims: "[B]y its use of the term '[n]otwithstanding any other provision of law,' the Legislature clearly meant to provide an overarching, all-embracing

---

[13] As discussed above, and contrary to *Macedo*'s reading, *Cortez* applied section 3439.09's filing deadlines, not the statute of limitations under Code of Civil Procedure section 338, subdivision (d). (*Cortez, supra*, 52 Cal.App.4th at pp. 919-920, 937.) The parties agree with our reading of *Cortez* on this point.

A few cases have cited *Macedo* for the proposition that a creditor may bring a common law action to challenge a voidable transfer. (*Berger v. Varum* (2019) 35 Cal.App.5th 1013, 1019, 1020-1021 [consequential and punitive damages available as common law remedies]; *Jhaveri v. Teitelbaum* (2009) 176 Cal.App.4th 740, 755 [similar]; *Wisden v. Superior Court* (2004) 124 Cal.App.4th 750, 756-757, 758 [parties entitled to jury trial in action to recover voidable transfer of determinate sum of money].) We question whether an action asserting the elements of a UVTA claim could be considered a common law action. (See *Moore v. Browning* (Ariz. 2002) 50 P.3d 852, 857-860 [enactment of Arizona's version of Uniform Fraudulent Transfers Act displaced any common law cause of action for fraudulent conveyance; thus, creditors' claim was subject to uniform law's statute of limitations].) But we need not decide the matter.

19

maximum time period to attack a [voidable] transfer, no matter whether brought under the [UVTA] or otherwise."[14] (*Macedo,* at pp. 1050-1051, fn. 4.)

In *PGA*, the Court of Appeal applied *Macedo*'s construction of former section 3439.09(c) to conclude that a voidable transfer claim filed more than seven years after the transfer—but less than two years after judgment on the underlying claim—was time-barred. (*PGA, supra*, 14 Cal.App.5th at pp. 164-165, 170, 188.) The court noted that the Legislature had amended section 3439.09(c) but stated that there had been no change in substance. (*PGA*, at pp. 162, fn. 2, 184.) Although it described *Macedo*'s reading of section 3439.09(c) as "technically dicta," it deemed it persuasive and added that "'it would be inordinate to bar [statutory voidable] transfer claims after seven years while allowing common law [voidable] transfer claims to be brought "scores of years after the transfer." [Citation.]'" (*PGA*, at p. 171.)

The *PGA* court proceeded to hold that section 3439.09(c) was a statute of repose and thus was not subject to tolling. (*PGA, supra*, 14 Cal.App.5th at p. 179.) In so concluding, the court determined that *Cortez* was "not particularly helpful" on the question due to the different facts of that case, but repeated *Macedo*'s inaccurate reading of it. (*PGA, supra*, 14 Cal.App.5th at pp. 181-182.) The *PGA* court said that under *Cortez*, "common law remedies to set aside [voidable] transfers are governed by the

---

[14] Former section 3439.09(c) provided: "Notwithstanding any other provision of law, a cause of action with respect to a fraudulent transfer or obligation is extinguished if no action is brought or levy made within seven years after the transfer was made or the obligation was incurred." As discussed below, the Legislature subsequently amended this subdivision, adding the phrase "under this chapter" after "a cause of action" and deleting the word "fraudulent." (§ 3439.09(c).)

three-year statute of limitations under Code of Civil Procedure section 338, subdivision (d)." (*Ibid.*)

2. Analysis

Based on the UVTA's plain language, applicable caselaw, and relevant legislative history, we conclude that section 3439.09(c) applies to any voidable transfer action asserting the elements of a UVTA claim, even if characterized as a common law action.[15] That provision therefore applies to RSMH's claim concerning the Chrysler property.

Section 3439.09(c) applies to causes of action "under this chapter"—under the UVTA—regarding a transfer or obligation. In its operative complaint, RSMH alleged that Spizzirri had encumbered the Chrysler property with intent to hinder, delay, or defraud his creditors, tracking the elements of a claim under section 3439.04, subdivision (a)(1). (*In re Medina* (Bankr. 9th Cir. 2020) 619 B.R. 236, 241.) RSMH's action is therefore an action under the UVTA for purposes of section 3439.09(c).

The fact that RSMH sought a judgment before bringing this action and requested relief not expressly included in the UVTA, such as punitive damages, does not change this conclusion.[16] Under section 3439.12, preexisting remedies add to the UVTA's provisions; they do not detract from

---

[15] Contrary to respondents' contentions, RSMH has not forfeited its argument that section 3439.09(c) does not apply to common law claims by failing to raise it below. (*Gutierrez v. Carmax Auto Superstores California, supra*, 19 Cal.App.5th at p. 1244 [on appeal from order sustaining demurrer, plaintiff may present new legal theory supporting claims].)

[16] As noted, *Berger v. Varum, supra*, 35 Cal.App.5th at pages 1020-1021, concluded that punitive damages may be available in a voidable transfer action. We express no opinion on this issue.

them. That section provides that "unless displaced by the provisions of [the UVTA]," principles of law and equity "supplement its provisions." (§ 3439.12.) "[T]o 'supplement' the [UVTA] means to provide something additional to the law, not to narrow or nullify the law." (*Mejia v. Reed* (2003) 31 Cal.4th 657, 665 [rejecting argument that Fam. Code, § 916 established exception to UVTA].) Where the UVTA speaks, it governs and "displace[s]"—i.e., preempts—contrary principles.[17] (§ 3439.12.) Thus, to the extent preexisting remedies supplement the provisions of the UVTA, they do not supplant them and cannot excuse compliance with the statute's filing deadlines.

Section 3439.13 further supports this conclusion. It instructs the courts to construe the UVTA in a way that effectuates its purposes to make the law uniform among the enacting states. (§ 3439.13.) Of the states that have enacted a version of the UVTA or its predecessor with special filing deadlines, we are aware of none that recognizes a common law voidable transfer action that (1) satisfies the elements of a statutory claim but is (2) free from the constraints of the statute's filing deadlines.

In response to our request for supplemental briefing on this point, RSMH discusses one relevant case, *In re Valente* (1st Cir. 2004) 360 F.3d 256. That case does not undermine our observation. There, the First

---

[17] Section 3439.12 "is derived from . . . Section 1-103 of the Uniform Commercial Code." (Assem. Com. on Fin. & Ins., Rep. on Sen. Bill No. 2150 (1985–1986 Reg. Sess.) 5 Assem. J. (1985–1986 Reg. Sess.) p. 8587 [discussing former section 3439.10, later renumbered 3439.12.].) The official comments to that section of the Uniform Commercial Code explain that the language of that provision "is intended to reflect both the concept of supplementation and the concept of preemption," which "extends to displacement of other law that is inconsistent with the purposes and policies of the Uniform Commercial Code, as well as with its text." (1 West's U. Laws Ann. (2024 supp.) U. Com. Code, com. 2 to § 1-103, p. 21.)

Circuit applied Rhode Island law to a creditor's claim that *did not* meet the elements of the state's version of the Uniform Fraudulent Transfer Act—the relevant property did not qualify as an "'asset'" under the statute. (*Id.*, at p. 260.) Thus, the court concluded that the claim was "not governed by the [uniform law]" and held that the creditor could still assert a common law claim subject to the general statute of limitations for fraud, rather than the uniform law's period of limitations. (*Id.* at pp. 261, 266.) This reasoning only reinforces our analysis: a claim that *does* fall within the substantive scope of the UVTA *is* governed by that statutory scheme and must comply with its filing deadlines, including section 3439.09(c).[18]

This analysis is also consistent with *Cortez*. The court there referenced remedies preexisting the UVTA to interpret the UVTA's filing deadline in former section 3439.09, subdivision (a), concluding that this four-year period had not expired. (*Cortez, supra*, 52 Cal.App.4th at pp. 929-931, 937.) Contrary to *Macedo* and *PGA*'s reading of that case, and as the parties agree, *Cortez* did not conclude that Code of Civil Procedure section 338 applied to the creditor's claim. Thus, rather than suggest that pursuing a preexisting remedy placed the creditor's action outside the UVTA, the court analyzed the claim as an ordinary UVTA claim for timeliness purposes. To the extent *Macedo* and *PGA* suggested that common law actions challenging debtors' transfers were entirely separate and independent from the UVTA, we believe their analysis was based in part on their misreading of *Cortez* and disagree for the reasons stated above.

---

[18] The other case RSMH discusses, *Freitag v. McGhie* (Wash. 1997) 947 P.2d 1186, is irrelevant. The court there held merely that Washington's common law discovery rule applied to filing deadlines under the state's version of the Uniform Fraudulent Transfer Act. (*Id.* at pp. 1189-1190.) RSMH makes no such argument as to section 3439.09(c).

The UVTA's legislative history confirms that section 3439.09(c)'s reference to "this chapter" was intended to include any action alleging a voidable transfer within the substantive scope of the UVTA. Before its most recent amendment in 2015, section 3439.09(c) did not include the phrase "under this chapter" and referred instead to a cause of action with respect to a "fraudulent" transfer or obligations. (Former § 3439.09(c).) Former sections 3439.04 and 3439.05 defined a "fraudulent" transfer or obligation using the same substantive elements their current versions provide for a voidable transfer or obligation. (Compare §§ 3439.04 & 3439.05 with former §§ 3439.04 & 3439.05.) As RSMH acknowledges, the Legislature saw the addition of "under this chapter" and deletion of "fraudulent" in section 3439.09(c) as non-substantive changes.[19] The reason this change was non-substantive is that a cause of action asserting the elements provided in sections 3439.04 and 3439.05 *is* a cause of action "under this chapter"—it is a UVTA claim.[20]

Nowhere in the legislative history is there any indication of the Legislature's intent that creditors' pursuit of preexisting remedies would immunize their claims from the UVTA's filing deadlines. Indeed, as *PGA* described, section 3439.09(c) was added in response to the bar's concern that the model uniform law's limitations period "did not include an 'absolute

---

[19] The Senate Committee on the Judiciary analysis of the amending bill described several categories of changes that did not apply to section 3439.09(c), plus "technical or non-substantive changes." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 161 (2015–2016 Reg. Sess.) as amended Apr. 14, 2015, p. 1.)

[20] For this reason, we reject the reliance by Spizzirri and 1700 N. El Camino Real on section 3439.14, under which substantive changes made by the current version of the UVTA do not apply retroactively. Section 3439.09(c) underwent no substantive change. (*PGA, supra*, 14 Cal.App.5th at pp. 162, fn. 2, 184.)

24

termination date'" and to its recommendation that "'an *absolute deadline* of ten years be imposed on *any creditor's* right to challenge *any transfer*.' [Citation.]" (*PGA, supra*, 14 Cal.App.5th at p. 184.) Given this concern and recommendation, it would have made little sense to provide an absolute deadline for some actions but no such deadline for others, based solely on the latter's characterization as common law actions. (*Id.* at p. 170.)

Although our analysis differs from that of *Macedo* and *PGA*, we agree with their essential conclusion. The statute of repose in section 3439.09(c) applies to any voidable transfer action asserting the elements of a UVTA claim, regardless of the remedies pursued. Accordingly, section 3439.09(c) applied to RSMH's claim concerning the Chrysler property. As discussed below, this rendered the claim untimely.

B. *Relation Back*

RSMH asserted its claim concerning the Chrysler property in 2022, more than seven years after Spizzirri's 2013 signing of the challenged second deed of trust. Its claim was therefore untimely under section 3439.09(c). RSMH contends the claim was nevertheless timely because it related back to Autogroup's timely filed claim. As discussed below, we conclude the relation-back doctrine does not apply because RSMH is a new plaintiff asserting a new, independent right.[21]

1. Governing Principles

"As a general rule, subsequent amendments to a pleading will 'relate back' to an earlier, timely filed pleading if they '(1) rest on the same general set of facts, (2) involve the same injury, and (3) refer to the same

---

[21] Given our conclusion, we need not address respondents' argument that the relation-back doctrine is either categorially or largely inapplicable to section 3439.09(c).

instrumentality, as the original [pleading].' [Citations.]" (*Engel v. Pech* (2023) 95 Cal.App.5th 1227, 1236. (*Engel*), italics omitted.) "However, when it comes to adding a new plaintiff, courts have refined the general rule: A new plaintiff's claims relate back to claims asserted in a previously and timely filed complaint if the new plaintiff is seeking to enforce the same right as a previously named plaintiff . . . . [Citations.] This is why amendments that do no more than swap in a new plaintiff for an existing cause of action—when the new plaintiff is the real party in interest and the original plaintiff was not—typically relate back [Citations.]" (*Id.* at pp. 1236-1237.)

"Conversely, a new plaintiff's claims do *not* relate back if the new plaintiff is seeking to 'enforce a[] . . . right' 'independent' of the right asserted by the previously named plaintiff(s). [Citations.] This occurs when (1) the new plaintiff's claims rest on a 'wholly different legal liability or obligation' (that is, a 'distinct' 'cause of action') 'from that originally [alleged]' [citations]; (2) the new plaintiff's claims entail a distinct injury [citation]; or (3) the new plaintiff's claims '"impose greater liability upon the defendant"' than the original plaintiff's claims [citations]. [Citations.]" (*Engel, supra*, 95 Cal.App.5th at pp. 1237-1238.) "At bottom, this refined, plaintiff-focused test is aimed at assessing whether adding the new plaintiff merely corrects a '"misnomer in the description of the [plaintiff]"' or instead 'interject[s] a new party into the litigation for the first time under the guise of a misnomer.' [Citations.]" (*Id.* at p. 1238.)

2. Analysis

We conclude that RSMH's voidable transfer claim in the third amended complaint does not relate back to Autogroup's timely claim in the original complaint because RSMH is a new party asserting a right independent from the right Autogroup asserted. Although both parties'

26

claims concerned the Chrysler property transaction, each sought to prosecute independent underlying claims. Autogroup had asserted (and ultimately lost on) claims for fraud and other torts based on Autogroup's delivery of funds to Spizzirri. By contrast, RSMH had prevailed on contractual claims based on the purchase agreement and the promissory note, to which Autogroup was not a party. Because the respective claims by Autogroup and RSMH rested on distinct obligations by Spizzirri to these separate entities, RSMH's claim cannot relate back to Autogroup's claims. (*Engel, supra*, 95 Cal.App.5th at pp. 1237-1238.)

The Court of Appeal's decision in *Engel* illustrates this point. The *Engel* court summarized the facts of that case: "A limited liability partnership and one of its partners retained a lawyer but limited the scope of representation to having the lawyer represent the partnership in a specific, ongoing case. After the partnership lost the case, the *partner* sued the lawyer for malpractice. In an amended complaint, the *partnership* was added as a plaintiff. The partner's complaint was filed before the statute of limitations ran; the amendment was filed after." (*Engel, supra*, 95 Cal.App.5th at p. 1231.) The court concluded the partnership's claims did not relate back to the timely filing of the partner's claims because the attorney's liability or obligation to each was "'different' and 'distinct.'" (*Id.* at p. 1238.) Because the partnership and the partner were both clients, the attorney "owe[d] *each* [the partner] *and* the [partnership] a separate 'legal liability or obligation' to perform competently the services for which he was retained, and each therefore own[ed] its own potential malpractice claims against [the attorney]." (*Id.* at p. 1239.) Thus, although each plaintiff's claims centered on the same acts by the attorney in representing the partnership, the court held

27

they were premised on different rights and therefore the partnership's claims did not relate back to the partner's claims. (*Id.* at pp. 1233, 1238.)

RSMH attempts to distinguish *Engel* by noting that the amended complaint there added the partnership as a plaintiff rather than substituted it for the original one, as RSMH and Autogroup did here. But the court's analysis in *Engel* did not rely on the addition of the partnership, as opposed to replacement of the partner. Instead, it merely highlighted that detail as showing the partner's *recognition* that the two parties asserted separate claims. (*Engel, supra*, 95 Cal.App.5th at p. 1239.) We see no reason why adding a plaintiff should preclude relation back where the new plaintiff is otherwise asserting the same right as the original. In sum, RSMH could not benefit from relation back, and its claim concerning the Chrysler property was therefore untimely.

## II.

### LEAVE TO ADD THEATER PROPERTY CLAIM

RSMH contends the trial court abused its discretion by denying it leave to add a cause of action concerning the transfer of the Theater property. We disagree. Like RSMH's Chrysler property claim, its claim concerning the Theater property had been extinguished by section 3439.09(c) because it presented the claim more than seven years after the challenged transfer. A trial court may reject a proposed amendment adding an untimely claim. (*Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217, 231.)

RSMH argues its proposed amendment related back to Autogroup's initial complaint in the federal action, which included a claim concerning the Theater property. For the reasons discussed above, RSMH's proposed amendment did not relate back to any complaint Autogroup had filed. (*Engel, supra*, 95 Cal.App.5th at pp. 1237-1238.) Moreover, in the

28

federal action, Autogroup voluntarily dismissed the Theater property claim. And the voluntary dismissal of a claim precludes a later assertion of relation back to that claim. (See *Thomas v. Gilliland* (2002) 95 Cal.App.4th 427, 432 [no relation back to complaint filed in prior action that had been voluntarily dismissed; upon voluntary dismissal, "the original action ceased as if it had never been filed"].) Accordingly, the trial court did not abuse its discretion in denying RSMH's motion for leave to amend.

DISPOSITION

The judgment is affirmed. Respondents are awarded their costs on appeal.

O'LEARY, P. J.

WE CONCUR:

DELANEY, J.

GOODING, J.