[Nos. B161069, B163110. Second Dist., Div. Three. July 29, 2004.]

JILL KLAJIC et al., Plaintiffs and Respondents, v.
CASTAIC LAKE WATER AGENCY et al., Defendants and Appellants.

COUNSEL

Horvitz & Levy, Barry R. Levy; The Hancock Law Office, William N. Hancock; McCormick, Kidman & Behrens, Russell G. Behrens, David D. Boyer; and R. Bruce Tepper for Defendants and Appellants.

Jennifer Kilpatrick; Kearney Alvarez, Thomas A. Kearney and Paul Alvarez for Plaintiffs and Respondents.

OPINION

**ALDRICH, J.—**

### INTRODUCTION

We are asked by the Castaic Lake Water Agency (the Agency) to construe section 15.1 of its enabling act, effective January 2002. (Stats. 2001, ch. 929, § 3, 72A West's Ann. Wat.—Appen. (2004 Supp.) § 103–1 et seq., p. 487 et seq., hereinafter the Agency Enabling Act.) The Agency has appealed from the judgment of the trial court ordering the issuance of a writ of mandate that prohibits the Agency from selling drinking water directly to consumers. The court ruled that section 15.1 of the Agency Enabling Act is not an independent grant of authority, and to sell water directly to the consumer, the Agency must first comply with the requirements of Water Code section 12944.7, subdivision (b).[1]

On appeal, the Agency contends section 15.1 of the Agency Enabling Act authorizes it, a water wholesaler, to sell water at retail independent of section

---

[1] Hereinafter, all statutory references are to the Water Code, unless otherwise noted.

12944.7, subdivision (b). We hold the Agency correctly construes the introductory phrase in section 15.1 of the Agency Enabling Act. Accordingly, we reverse the judgment and the award of attorney fees.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The factual predicate.*

■ Created by the Legislature, the Agency is a special district whose purpose, according to section 15 of the Agency Enabling Act, is to "acquire water and water rights . . . and provide, sell, and deliver that water *at wholesale only . . . .*" (Agency Enabling Act, § 103–15, p. 500, italics added; *Klajic v. Castaic Lake Water Agency* (2001) 90 Cal.App.4th 987, 991 [109 Cal.Rptr.2d 454], hereinafter *Klajic I.*) The Agency operates in the Santa Clarita Valley in Los Angeles County. It provides water to four local water utilities, including the Santa Clarita Water Company (the Water Company) and the Newhall County Water District.

■ Beginning in 1999, the Agency commenced efforts to sell water directly to consumers. It did so by relying on section 12944.7, subdivision (b). That statute allows a wholesale water agency to sell water at retail "only pursuant to written contract with . . . a water corporation . . . subject to regulation by the Public Utilities Commission [PUC] and serving water at retail within the area in which the consumer is located."[3] (§ 12944.7, subd. (b).) Accordingly, the Agency entered into a transaction with the Water Company. (*Klajic I, supra*, 90 Cal.App.4th at pp. 991–992.)

Before the transaction was closed, however, respondents,[4] property owners, residents, and taxpayers located in the area covered by the Agency, sought a peremptory writ of mandate to force the Agency to comply with section 12944.7, subdivision (b). (*Klajic I, supra*, 90 Cal.App.4th at p. 993.) Respondents argued, inter alia, that section 12944.7, subdivision (b) authorized the

---

[2] For purposes of clarity we refer to appellants as the Agency. Along with the Agency, appellants include the Castaic Lake Water Agency Financing Corporation and the Santa Clarita Water Company.

[3] Section 12944.7 states in subdivision (b): "Notwithstanding subdivision (a), if the principal act of the public agency restricts the agency to the wholesale distribution of water, the right to sell water directly to consumers may be exercised by the agency only pursuant to written contract with (1) a wholesaler, if any exists, to which the water would otherwise be sold and (2) a public entity water purveyor, if any exists, serving water at retail within the area in which the consumer is located or a water corporation, if any exists, subject to regulation by the Public Utilities Commission and serving water at retail within the area in which the consumer is located."

[4] Respondents are Jill Klajic, Lynne Plambeck, Joan Dunn, and Jackie Bettencourt, representing taxpayers and voters in the territory of the Agency, and representing retail water customers of the Santa Clarita Water Company.

retail sale of water only pursuant to a contract with an independent water retailer which is subject to PUC regulation. According to respondents, the net effect of the Agency's transaction with the Water Company would be a merger of those two entities into a single unified company that would not be subject to PUC regulation and hence, would not comply with section 12944.7, subdivision (b). (*Klajic I, supra,* at p. 994.)

### 2. *The first appeal.*

In *Klajic I*, we held that section 12944.7, subdivision (b) granted a water wholesaler, such as the Agency, the right to sell water at retail but " '*only pursuant to written contract with*' " a separate entity that is subject to PUC regulation. (*Klajic I, supra,* 90 Cal.App.4th at p. 997.) We explained that section 12944.7, subdivision (b) "clearly manifests the Legislature's intent there be a contract, which a fortiori, must be between two separate parties, each time the Agency sells water at retail." (90 Cal.App.4th at p. 998.) That is we explained, the two parties to the contract under section 12944.7, subdivision (b) must maintain their separate existences and must be subject to PUC regulation during the life of the contract, or at any time the Agency seeks to sell water directly to the consumer. (90 Cal.App.4th at p. 998.) We reversed the judgment and remanded to the trial court to determine whether, as the result of the challenged transaction, the Water Company continued to exist as an entity separate from the Agency, and continued to be subject to regulation by the PUC, so as to satisfy the requirements of section 12944.7, subdivision (b). (90 Cal.App.4th at pp. 1000–1001.)

### 3. *Passage of Assembly Bill No. 134.*

While *Klajic I* was pending, the Agency sought a legislative solution. The Agency sponsored Assembly Bill No. 134 (2001–2002 Reg. Sess.). Of particular importance to this appeal is section 3 of Assembly Bill No. 134, which added section 15.1 to the Agency Enabling Act. Section 15.1 reads in pertinent part: "*Notwithstanding subdivision (b) of Section 12944.7 of the Water Code* [analyzed in *Klajic I*] *and Section 15 of this act* [authorizing the Agency to sell water at wholesale only], *but subject to paragraph (2),* the agency may exercise retail water authority only within the [specified] boundaries. . . ." (Agency Enabling Act, 72A West's Ann. Wat.—Appen. (2004 Supp.) § 103-15.1, subd. (a)(1), p. 4, italics added.) The statute then defines the boundaries by reciting specific metes and bounds.[5]

---

[5] The Agency informs us that the metes and bounds in section 15.1 correspond to the Water Company's service area on September 2, 1999, the day before the Agency acquired the Water Company.

Paragraph 2 of section 15.1 then grants the Newhall County Water District authority over geographical areas that were not served by the Water Company on September 2, 1999, and protects all of the Newhall County Water District's existing water rights within the Water Company's geographic boundaries. (Agency Enabling Act, § 103-15.1, subd. (a)(2)(A), p. 5.)[6] Subdivision (b) precludes the Agency from exercising retail water authority outside the boundaries described in paragraph (1) of subdivision (a), without statutory authorization. (Agency Enabling Act, § 103-15.1, subd. (b).)

Section 15.1 of the Agency Enabling Act was enacted in 2001, while *Klajic I* was pending. The statute became effective on January 1, 2002, not long after the trial court regained jurisdiction upon issuance of the remittitur in *Klajic I*.

### 4. *Trial.*

Returning to the trial court upon our remand, respondents renewed their contention that the events that occurred during and after the Agency's transaction with the Water Company brought about a de facto merger of the two entities. As a result, they argued, no contract existed that complied with section 12944.7, subdivision (b). Respondents noted they have already received rate increases not approved by the PUC or the Water Company's board.

Rather than to dispute the merger issue, the Agency pointed to Assembly Bill No. 134 (2003–2004 Reg. Sess.). The Agency argued that Assembly Bill No. 134 added section 15.1 to the Agency Enabling Act to allow the Agency to sell water at retail within the Water Company's service area without complying with section 12944.7, subdivision (b). Passage of section 15.1, the Agency argued, rendered irrelevant the question of whether it had a contract with a separate entity retailer subject to PUC regulation.

The trial court disagreed. The court ruled that Assembly Bill No. 134 (2001–2002 Reg. Sess.) was a further limitation upon the right granted by section 12944.7, subdivision (b). The court construed Assembly Bill No. 134 to mean that the Agency could sell water directly to the ultimate consumer only pursuant to contract with a water company that is subject to PUC regulation pursuant to section 12944.7,

---

[6] Paragraph 2 states: "(A) Any area within the area described in paragraph (1) that is also within the boundaries of the Newhall County Water District, and not served by the Santa Clarita Water Company on September 2, 1999, may not be served by the agency unless the Newhall County Water District has granted approval. [¶] (B) Nothing in this section prohibits the Newhall County Water District from exercising any authority conferred by other law for the purpose of providing retail water service within the area described in paragraph (1)." (Agency Enabling Act, § 103-15.1, subd. (a)(2)(A) & (B).)

subdivision (b), and only within specific territorial boundaries described by the metes and bounds in Assembly Bill No. 134.

Accordingly, the trial court ordered the issuance of a writ of mandate prohibiting the Agency and the Water Company, as an alter ego of the Agency, from selling water at retail, until such time as the Agency entered into a bona fide contract. The trial court awarded respondents attorney fees and costs in the amount of $202,721.80 pursuant to Code of Civil Procedure section 1021.5. The Agency's appeal followed.

## CONTENTION

The Agency contends the trial court erred in construing section 15.1 of the Agency Enabling Act.

## DISCUSSION

1. *Standard of review.*

The Agency does not challenge the trial court's finding that the Agency and the Water Company have merged precluding compliance with section 12944.7, subdivision (b). Instead, the Agency contends on appeal that the passage of Assembly Bill No. 134 (2001–2002 Reg. Sess.) renders *Klajic I* and the subsequent trial court judgment irrelevant. They reason that as of January 2002, section 15.1 of the Agency Enabling Act authorizes the Agency to sell water at retail regardless of whether it has entered into a contract that conforms with section 12944.7, subdivision (b).

Our task in this second appeal is to interpret section 15.1 of the Agency Enabling Act and apply it to the facts here. As we explained in *Klajic I*, "A traditional writ of mandate under Code of Civil Procedure section 1085 is a method for compelling a public entity to perform a legal and usually ministerial duty. [Citation.] The trial court reviews an administrative action pursuant to Code of Civil Procedure section 1085 to determine whether the agency's action was arbitrary, capricious, or entirely lacking in evidentiary support, contrary to established public policy, unlawful, procedurally unfair, or whether the agency failed to follow the procedure and give the notices the law requires. [Citations.] 'Although mandate will not lie to control a public agency's discretion, that is to say, force the exercise of discretion in a particular manner, it will lie to correct abuses of discretion. [Citation.] In determining whether an agency has abused its discretion, the court may not substitute its judgment for that of the agency, and if reasonable minds may disagree as to the wisdom of the agency's action, its determination must be upheld. [Citation.]' [Citation.]" (*Klajic I, supra*, 90 Cal.App.4th at p. 995, fn. omitted.)

■ On appeal from a judgment on a petition for writ of ordinary mandate, "we exercise our independent judgment about legal questions. [Citations.]" (*Klajic I, supra*, 90 Cal.App.4th at p. 996.)

> *2. Section 15.1 of the Agency Enabling Act grants the Agency independent authority to sell water at retail without the necessity of a contract pursuant to section 12944.7, subdivision (b).*

The trial court construed section 15.1 of the Agency Enabling Act to limit the retail rights that would otherwise be available to the Agency if it complied with section 12944.7, subdivision (b). That is, the court read Assembly Bill No. 134 (2001–2002 Reg. Sess.) to mean that section 15.1 of the Agency Enabling Act, in conjunction with section 12944.7, subdivision (b), requires the Agency to obtain a contract with a separate entity regulated by the PUC (§ 12944.7, subd. (b)) before it could sell water at retail to the ultimate consumer, and then only within the specified geographical boundaries.

The Agency contends that section 15.1 is an entirely new, independent grant of authority to it to sell water at retail, limited only by geography, and irrespective of section 12944.7, subdivision (b). We agree with the Agency.

> *a. The rules of statutory interpretation.*

In determining under what conditions the Agency is authorized to sell water to the ultimate consumer, " '[i]f the language is clear and unambiguous[,] there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . .' [Citation.] If the language permits more than one reasonable interpretation, however, the court looks 'to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' [Citation.]" (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977 [90 Cal.Rptr.2d 260, 987 P.2d 727]; see *Klajic I, supra*, 90 Cal.App.4th at p. 997.)

> *b. Assembly Bill No. 134 amended the Agency Enabling Act by adding an independent authority to sell water at retail without regard to the requirements of section 12944.7, subdivision (b).*

The crucial language before us is that of section 15.1, subdivision (a)(1) of the Agency Enabling Act. It provides, *"Notwithstanding subdivision (b) of Section 12944.7 of the Water Code* [construed in *Klajic I* to require a contract and PUC oversight] and Section 15 of this act [granting the Agency right to sell water at wholesale only], but subject to paragraph (2), the agency may exercise retail water authority *only within the following boundaries* . . . ." (*Ibid.*, italics added.)

"Notwithstanding" means "without prevention or obstruction from or by" or *"in spite of"* (Webster's 3d New Internat. Dict. (unabridged Dict. 1993) p. 1545, italics added) or "despite" (Webster's 10th New Collegiate Dict. (1995) p. 795).

█  The statutory phrase "notwithstanding any other law" has been called a " 'term of art' " (*People v. Franklin* (1997) 57 Cal.App.4th 68, 73–74, [66 Cal.Rptr.2d 742]) that declares the legislative intent to override all contrary law. (*People v. Tillman* (1999) 73 Cal.App.4th 771, 784–785 [86 Cal.Rptr.2d 715], and cases cited therein.) By use of this term, the Legislature expresses its intent " 'to have the specific statute control despite the existence of other law which might otherwise govern.' [Citation.]" (*People v. Franklin, supra,* at p. 74; *People v. Tillman, supra,* at p. 785; see *Macedo v. Bosio* (2001) 86 Cal.App.4th 1044, 1050–1051, fn. 4 [104 Cal.Rptr.2d 1]; *In re Marriage of Cutler* (2000) 79 Cal.App.4th 460, 475 [94 Cal.Rptr.2d 156], ["notwithstanding any other provision of law" "signals a broad application overriding all other code sections"].) The more narrow phrase "notwithstanding subdivision (a)" expresses the legislative intent to "carve out an exception only to subdivision (a) . . . ." (*People v. Flannery* (1985) 164 Cal.App.3d 1112, 1120 [210 Cal.Rptr. 899].)

█  Here, section 15.1's "notwithstanding" language is specific, referring to the requirements in section 12944.7, subdivision (b) and the grant only of wholesale water authority to the Agency in section 15 of the Agency Enabling Act. Section 15 of the Agency Enabling Act prevents the Agency from, and section 12944.7, subdivision (b) sets forth specific conditions for, selling water at retail. Newly enacted section 15.1 now authorizes the Agency to sell water to the ultimate consumer within a specified geographic area "notwithstanding" or *despite* the prerequisites to that authority in section 12944.7, subdivision (b) and the prohibition in section 15 of the Agency Enabling Act. As a later enacted statute that includes the phrase "notwithstanding subdivision (b) of Section 12944.7," section 15.1 of the Agency Enabling Act necessarily controls over section 12944.7, subdivision (b). (*People v. Franklin, supra,* 57 Cal.App.4th at pp. 73–74.)

The import of section 15.1 of the Agency Enabling Act is clear and unambiguous. (See *In re Marriage of Cutler, supra,* 79 Cal.App.4th at p. 475.) By using the statutory term of art "notwithstanding," the Legislature intended to have the specific grant of retail water authority to the Agency control, despite the existence of the two statutes which would otherwise govern and limit that right. (*People v. Franklin, supra,* 57 Cal.App.4th at pp. 73–74.) The import of the language of section 15.1 of the Agency Enabling Act is that it is an independent grant of retail water authority. By requiring the Agency first to comply with the contract requirements of section

12944.7, subdivision (b) before selling water at retail under section 15.1 of the Agency Enabling Act, the trial court ignored the "notwithstanding" clause.

■ Our holding is bolstered by the next phrase in section 15.1, *"but subject to paragraph (2)."* Paragraph 2 protects the Newhall County Water District's existing interests in the same geographical area. In this context, "subject to paragraph 2" means "governed by" or "affected by" paragraph 2. (Black's Law Dict. (6th ed. 1990) p. 1425, col. 2.) Read in its entirety, considering the juxtaposition of all of the predicate phrases, section 15.1 subdivision (a)(1) establishes the Agency's retail water authority *independent* of Water Code section 12944.7, subdivision (b) and section 15 of the Agency Enabling Act, but *governed by* the requirements of paragraph 2 of section 15.1. Had the Legislature desired to make section 15.1, subdivision (a)(1) merely a geographical limitation to be added to the prerequisites of section 12944.7, subdivision (b), as parsed by the trial court, then it would have stated that section 15.1 of the Agency Enabling Act was "subject to" section 12944.7, subdivision (b), or omitted the "notwithstanding" clause altogether. Although the Legislature knows how to do that, it did not in this case. Hence, section 15.1, subdivision (a)(1) is a grant of retail water authority within specific geographical boundaries, independent of the prerequisites of section 12944.7, subdivision (b) and the limitation of section 15 of the Agency Enabling Act, but subject to the rights of the Newhall County Water District as set out in paragraph (2).

Having concluded the meaning of section 15.1 of the Agency Enabling Act is clear and unambiguous, we need not resort to the legislative history.[7] (*Wilcox v. Birtwhistle, supra,* 21 Cal.4th at p. 977.) We note, however, that our reading of the statute comports with the declaration contained in the Legislative Counsel's Digest, that "[t]his bill [Assembly Bill No. 134] would *authorize* [the Agency] to exercise *retail* water authority . . . ." (Legis. Counsel's Dig., Assem. Bill No. 134 (2001–2002 Reg. Sess.), italics added.) Although Assembly Bill No. 134 underwent upwards of nine permutations, all but the first two versions of the bill reflected the legislative intent that section 15.1, subdivision (a)(1) would "authorize the agency to exercise retail water authority . . . ." (Legis. Counsel's Dig., Assem. Bill No. 134 (2001–2002 Reg. Sess.).) Moreover, this specific grant was conferred, not in section 12944.7, subdivision (b), which applies generally to any wholesale water agency, but in the Agency's own enabling act. The location of this portion of Assembly Bill No. 134 indicates the legislative plan to circumvent the hurdle to retail authority caused by the

---

[7] We granted respondents' motion to take judicial notice of the legislative history of Assembly Bill No. 134. However, because we conclude the language of Assembly Bill No. 134 is clear and unambiguous, we need not consider the legislative history in resolving the issue presented to us. (*Wilcox v. Birtwhistle, supra,* 21 Cal.4th at p. 977.)

Agency's takeover of the Water Company. Furthermore, the Agency sponsored Assembly Bill No. 134 while it was embroiled in this litigation over the meaning of section 12449.7, subdivision (b)'s prerequisites to obtaining retail water authority. We doubt the Agency would have expended the time and resources to have the bill enacted merely to add another limitation to retail authority on top of section 12944.7, subdivision (b)'s requirements.

To summarize, section 15.1, subdivision (a)(1) is an independent grant of retail water authority to the Agency, despite any prerequisites to such authority contained in subdivision (b) of section 12944.7. The only limitations are those listed in section 15.1. Thus, the trial court erred in ruling the Agency was required first to fulfill the contractual requirements of section 12944.7, subdivision (b) before it could sell water to the ultimate consumer.

3. *Assembly Bill No. 134 was intended to apply prospectively only.*

Assembly Bill No. 134 (2001–2002 Reg. Sess.) also added a declaration of intent to section 12944.7, subdivision (b). Section 5 of Assembly Bill No. 134 states: "The Legislature finds and declares that because Sections 1, 3, and 4 of this act, which amend Section 12944.7 of the Water Code and the Castaic Lake Water Agency Law (Chapter 28 of the Statutes of 1962, First Extraordinary Session), are *prospective, the Legislature expresses no opinion with regard to any court actions filed prior to July 1, 2001.*" (Italics added.) By this declaration, the Legislature gave a nod to the ongoing litigation in *Klajic I* and sought not to interfere with the outcome of the first appeal. The Legislature nonetheless granted the Agency authority to sell water to the ultimate consumer independent of section 12944.7, subdivision (b), commencing January 1, 2002, when the statute became effective.[8]

---

[8] See Senate Local Government Committee analysis of Assembly Bill No. 134: "Asking the Legislature *to clearly authorize the Agency to be in the retail water business* while a challenge is pending in the Second District Court of Appeals [*sic*] might be construed as a legislative assent *to the Agency's purchase of the private water company.* To avoid *that* inference, the Committee may wish to consider an amendment declaring that in passing the bill, legislators express no view on the pending litigation. [¶] [Moreover,] [a]n accepted rule of statutory construction is that legislation has a prospective effect. The 1990 Kelley bill [adding Water Code section 12944.7, subdivision (b)] allowed water wholesale agencies to go into the retail water business *but only under specific conditions.* [*Assembly Bill No.*] *134 allows the Castaic Lake Water Agency to be the retail water purveyor in the area served by the Santa Clarita Water Company.* [Assembly Bill No.] 134 amends both the 1990 law and the Agency's own principal act. The Committee may wish to consider an amendment that clearly declares that the bill is prospective and not retroactive in any way." (Sen. Local Gov. Com., Analysis of Bill No. 134 (2001–2002 Reg. Sess.) as amended June 11, 2001, p. 3, italics added.)

4. *The order awarding attorney fees must be reversed.*

The Agency asks us to reverse the award of attorney fees, granted pursuant to Code of Civil Procedure section 1021.5. "[W]here an appellate court reverses a judgment ordering issuance of a writ of mandate, '[i]t follows' that the trial court's section 1021.5 attorney fees award must also be reversed. [Citations.]" (*National Parks & Conservation Assn. v. County of Riverside* (2000) 81 Cal.App.4th 234, 238 [96 Cal.Rptr.2d 576].) Respondents obtained a favorable result in the trial court based on the court's conclusion that the Agency's transaction with the Water Company resulted in a merger of the two entities that did not comply with subdivision (b) of section 12944.7's prerequisites to selling water to the consumer.

██  Based on our construction of section 15.1 of the Agency Enabling Act, we reverse the judgment and direct the trial court to vacate the writ. Consequently, respondents have ultimately been unsuccessful in their efforts to stop the Agency from selling water at retail. It is therefore automatic that the section 1021.5 attorney fee award must be reversed. (*Id.* at p. 239.)

## DISPOSITION

The judgment is reversed. The trial court is directed to vacate its order granting the petition and enter an order denying the petition. The attorney fee award is reversed. Each party to bear its own costs on appeal.

Klein, P. J., and Croskey, J., concurred.