Filed 11/26/24  P. v. McBride CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LAMETRA MARCELLA MCBRIDE,<br><br>    Defendant and Appellant. | G062470<br><br>(Super. Ct. No. 20HF1785)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Gregg L. Prickett and Terri K. Flynn-Peister, Judges. Affirmed.

Shay Dinata-Hanson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Ksenia Gracheva, Deputy Attorneys General, for Plaintiff and Respondent.

Lametra Marcella McBride appeals from a judgment after a jury convicted her of possessing methamphetamine while armed, possessing methamphetamine for personal use, and possessing a methamphetamine pipe. McBride contends: (1) the trial court erred when it admitted evidence that she used methamphetamine years earlier, which led to instructional error; (2) the charge for possessing methamphetamine while armed (Health & Saf. Code, § 11370.1)[1] is unconstitutional; and (3) we should review the court's in camera *Pitchess* hearing (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*)). We conclude the first contention has merit but that the evidentiary error, and subsequent instructional error, was harmless. We further conclude section 11370.1 is constitutional. And after reviewing the court's *Pitchess* proceedings, we find no error. We affirm the judgment.

FACTS

I.

THE TRAFFIC STOP AND INFORMATION

McBride slept in a car's passenger seat when two patrolling Laguna Beach Police Officers initiated a traffic stop for traffic violations. The driver, who was McBride's boyfriend and on parole, responded very slowly to the emergency lights and drove a half mile before eventually stopping. One officer spoke with McBride and saw her purse on the passenger seat floorboard. McBride consented to the officer searching her purse. The purse was a large mesh tote bag with miscellaneous "junk drawer" type items inside, along with a half-full bottle of alcohol, a knife, socks, a pack of cigarettes, and a smaller orange makeup bag. Inside the orange bag, the

_____

[1] All undesignated statutory references are to the Health and Safety Code.

2

officer found McBride's California identification card, a small plastic bag of methamphetamine, a pipe used for ingesting methamphetamine, and a firearm. The firearm had one round in the chamber and six in the magazine. The police department later fire-tested the firearm and determined it was operable. The firearm and ammunition were never tested for DNA.

An information charged McBride with possession of a controlled substance while armed (§ 11370.1, subd. (a); count 1), carrying a concealed firearm in a vehicle (Pen. Code, § 25400, subds. (a)(1), (c)(7); count 2), possession of methamphetamine (§ 11377, subd. (a); count 3), and possession of a methamphetamine pipe (§ 11364, subd. (a); count 4). McBride pleaded not guilty, and the case progressed to pretrial motions.

## II.

### PRETRIAL MOTIONS

McBride first filed a *Pitchess* motion, requesting the trial court review both involved officers' personnel records for discoverable materials. After reviewing their records, the court determined no records required disclosure.

Next, McBride filed a demurrer arguing the firearm restrictions in counts 1 and 2 violated the Second and Fourteenth Amendments as construed under the recent United States Supreme Court case, *New York State Rifle & Pistol Assn., Inc. v. Bruen* (2022) 597 U.S. 1 (*Bruen*). The demurrer alleged both counts were facially devoid because California's firearm licensing scheme is unconstitutional under *Bruen*. The trial court overruled McBride's demurrer.

3

During motions in limine, the trial court inquired whether there were "felony convictions, misdemeanor convictions, or anything that [the prosecutor was] seeking to impeach [McBride] with." Referring to McBride's simple possession of methamphetamine arrests from 14 years earlier, the prosecutor advised, "[W]ell, none that I'm seeking to impeach her with in terms of being moral turpitude to impeach her credibility. However, . . . if [McBride] says something like, 'Oh, I've'—'I have no knowledge of this particular thing,' and there's evidence that she does and I think it's relevant, I would ask to sidebar first before I ask her about it." McBride's counsel moved to exclude impeachment evidence of McBride's prior arrests. The court granted the motion, "with the caveat" they would have the sidebar hearing before allowing it.

III.

THE TRIAL

At trial, both officers testified about the encounter with McBride. One officer described the illicit items she found in McBride's purse. Along with this officer's testimony, the prosecutor proffered body worn camera video evidence depicting the officer searching the purse and photo evidence of the firearm, the methamphetamine, and the pipe.

After the prosecution's case-in-chief, McBride moved for a judgment of acquittal as to both firearm counts, again alleging both charges were unconstitutional under *Bruen*. (Pen. Code, § 1118.1; *Bruen, supra,* 597 U.S. 1.) McBride reasoned the statutes violated the Second and Fourteenth Amendments because *Bruen* rendered California's licensing scheme unconstitutional and because the prosecutor failed to meet his burden to prove the statutes were consistent with the nation's historic traditions of gun regulation, as required under *Bruen*. The trial court denied McBride's motion.

4

McBride testified in her defense, claiming she did not know how the methamphetamine, pipe, or firearm ended up in her orange bag inside her purse. She stated she and the driver were coming from a party where she left her purse unattended in another room for the duration of the party and did not notice anything unusual about her bag upon leaving. She said she consented to the officer searching her bag because she had nothing to hide. Counsel asked, "Had you used methamphetamine that evening" or "in the past day?" McBride answered "No" to both questions. She testified she did not know the driver to use methamphetamine or to have guns and had no reason to suspect as much.

Before cross-examination, the prosecutor requested a sidebar conversation. At sidebar, the prosecutor advised he intended to ask McBride about her prior methamphetamine use. Counsel objected on relevance grounds and argued the prejudicial effect outweighed the probative value under Evidence Code section 352. The trial court overruled counsel's objections. The prosecutor inquired as follows:

"[Prosecutor:]   So, . . . McBride, [counsel] asked you if you had used . . . methamphetamine that day, and your answer was no; correct?

"[McBride:]   Correct.

"[Prosecutor:]   And he also asked if you had used methamphetamine the past day, and your answer was no; correct?

"[McBride:]   Correct.

"[Prosecutor:]   But you have used methamphetamine before; isn't that true?

"[Counsel:]   Objection. Relevance.

"The [c]ourt:   Overruled.

"[McBride:]        Like years and years ago. [¶] . . . [¶]

"[Prosecutor:]     And so it's fair to say that you know what methamphetamine looks like; correct?

"[McBride:]        Yes. [¶] . . . [¶]

"[Prosecutor:]     Is it fair to say that you also know what a methamphetamine pipe looks like?

"[McBride:]        Yes. We just saw one.

"[Prosecutor:]     But prior to this incident, you knew?

"[McBride:]        Yes."

After both parties rested, the trial court discussed a limiting instruction about how the jury may consider the evidence of McBride's past methamphetamine use. The court explained it allowed the evidence for "credibility impeachment" and not for any other purpose. The court asserted it was inadmissible under Evidence Code section 1101, subdivision (b), and added: "[T]he only reason that question would be admissible is impeachment to putting in context what [counsel] offered. [¶] [Counsel] offered a portrayal of . . . McBride as someone who did not use methamphetamine, and the jury could then extrapolate from that she doesn't use methamphetamine; she has used it in the past. . . . [Y]ou don't need to believe her that this just appeared in her orange bag; she's used methamphetamine in the past. That's fair." The court emphasized, "[The jury] can reject her testimony and determine that she knew what it was or that she knew she had it there. [¶] . . . [¶] Admitting to use of methamphetamine in the past is admitting to committing a crime in the past. [¶] . . . [¶] In a case in which we're talking about methamphetamine it is relevant."

As finalized, CALCRIM No. 303 read, in relevant part: "You heard evidence that defendant may have used methamphetamine in the past. . . . You may use this evidence in deciding whether the defendant had knowledge of the nature and character of the methamphetamine and methamphetamine pipe. You may also use this testimony to judge the witness's credibility."[2]

During closing arguments, McBride's defense was that the driver, who was her boyfriend and on parole, could have placed the items in her bag during the party or while he was being pulled over because she was asleep. The prosecution argued the gun, pipe, and methamphetamine belonged to McBride, and the only reasonable conclusion was that McBride knew they were in her purse, next to her identification card.

The jury found McBride not guilty of carrying a concealed firearm in a vehicle (Pen. Code, § 25400; count 2) and guilty on all remaining charges. The trial court sentenced McBride to two years formal probation and stayed the probationary term pending appeal. McBride timely appealed.

---

[2] The modified version of CALCRIM No. 303 read: "You heard evidence that defendant may have used methamphetamine in the past. You may not use this evidence to conclude that the defendant possessed methamphetamine or a methamphetamine pipe on November 8, 2020 based on that testimony alone. You may use this evidence in deciding whether the defendant had knowledge of the nature and character of the methamphetamine and methamphetamine pipe. You may also use this testimony to judge the witness's credibility. You may use that testimony for these purposes only and are not to consider it for any other purpose."

DISCUSSION

McBride raises three arguments: (1) the trial court improperly allowed testimony of McBride's previous methamphetamine use to be admitted as character evidence, which lead to instructional error; (2) section 11370.1 is unconstitutional under *Bruen*; and (3) we should review the court's in camera *Pitchess* proceedings. As discussed below, we conclude the court admitted the evidence under an incorrect theory of admissibility, but it was nevertheless admissible under Evidence Code section 1101, subdivision (b). The court's subsequent instructional error was harmless. We hold section 11370.1 survives *Bruen*. Finally, we conclude there was no legal error in the court's *Pitchess* proceedings.

I.

CHARACTER EVIDENCE

McBride contends the evidence that she used methamphetamine "years and years ago" was improperly admitted as character evidence and was exceedingly prejudicial. McBride asserts the limiting instruction did not cure the error. We find any error was harmless.

*A. Standard of Review*

A trial court's "discretion in admitting or excluding evidence" is reviewable for abuse of discretion "and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. [Citation.]" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9–10.) "State evidentiary law error in admitting uncharged act evidence is reviewed under the [*People v.*] *Watson* [(1956) 46 Cal.2d 818] standard" where ""a defendant must show it is reasonably probable a more favorable result would have been obtained

8

absent the error.""" (*People v. Clark* (2021) 62 Cal.App.5th 939, 968, quoting *People v. Beltran* (2013) 56 Cal.4th 935, 955.)

*B. Evidence Code Sections 780 and 1101*

While a prior conviction may be admissible to impeach a witness's veracity where the prior act involves moral turpitude or disproves any fact the witness testified to (Evid. Code, § 780), neither impeachment theory is applicable here. Simple drug possession does not involve moral turpitude, and McBride testified that she did not use methamphetamine *that day* or *the day prior*—not that she had never used methamphetamine. The trial court erred in concluding the evidence was admissible as impeachment because the evidence does not contradict McBride's testimony. However, the misstated legal basis was inconsequential because the evidence was plainly admissible under Evidence Code section 1101, subdivision (b).

Generally, evidence that a criminal defendant previously committed uncharged crimes is inadmissible "when offered to prove his or her conduct on a specified occasion." (Evid. Code, § 1101, subd. (a).) But such evidence may be admissible "when relevant to prove some fact . . . other than his or her disposition to commit such an act," such as knowledge. (*Id*., subd. (b).)

To prove a defendant guilty of possessing methamphetamine for personal use under section 11377, the prosecutor must prove, in relevant part, that "[t]he defendant knew of the substance's nature or character as a controlled substance." (CALCRIM No. 2304.) Pleading not guilty places the charged offense's elements in dispute. (*People v. Clark*, *supra*, 62 Cal.App.5th at p. 959.) Accordingly, evidence tending to prove the knowledge element is at-issue and highly relevant. (Evid. Code, § 210.) Indeed, "[i]n prosecutions for drug offenses, evidence of prior drug use . . . is generally admissible under

9

Evidence Code section 1101, subdivision (b) . . . to prove knowledge of the narcotic nature of the drugs. [Citations.]" (*People v. Williams* (2009) 170 Cal.App.4th 587, 607.)

Although evidence that McBride used methamphetamine years ago was inadmissible to impeach her character or veracity, it was still admissible for the limited purpose of showing McBride's knowledge that the substance was a narcotic since this is an element of count 3, simple methamphetamine possession under section 11377, subdivision (a). The trial court's mistaken basis for admission, if cured, would result in the same outcome; the evidence was admissible.

*C. Evidence Code Section 352*

McBride also contends the trial court should have barred the evidence under Evidence Code section 352. This argument fails.

The trial court "in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) Evidence showing a defendant committed the same offense on a separate occasion is inherently prejudicial. But undue prejudice does not simply mean evidence that harms the defendant's case. (*People v. Kerley* (2018) 23 Cal.App.5th 513, 532.) """"[T]he prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence."""" (*Ibid.*, quoting *People v. Fruits* (2016) 247 Cal.App.4th 188, 205.)

Because knowledge of the narcotic was an element of count 3, evidence showing McBride is familiar with methamphetamine is highly probative. The prejudicial effect the evidence has on the jury "naturally flows" from the relevant evidence. (*People v. Kerley* (2018) 23 Cal.App.5th 513, 532.) The probative value is more significant than any prejudicial effect given she testified she used methamphetamine "years and years ago" as opposed to recently. Indeed, the remoteness in time actually dampens the prejudicial effect in this context. The jury had already heard evidence McBride possessed methamphetamine on the occasion at issue, minimizing any salacious or shocking effect the evidence may have had on the jury. The trial court correctly found the evidence is not barred by Evidence Code section 352.

*D. Limiting Instruction*

McBride only asserts that the limiting instruction did not cure the error of admitting the prior use evidence, but we will address the issue as a general claim of instructional error and find the trial court's error harmless.

We review claims of instructional error de novo. (*People v. Manriquez* (2005) 37 Cal.4th 547, 581.) As discussed above, the evidence was only admissible to show McBride's knowledge, not to judge her credibility. As such, the trial court erred when it included in its limiting instruction, "You may also use this testimony to judge the witness's credibility." While the rest of CALCRIM No. 303 correctly instructed the jury it may use the evidence to show McBride's knowledge that the substance she possessed was methamphetamine, this sentence improperly permitted the jury to use the evidence to judge McBride's credibility.

This error was harmless considering the sufficient evidence supporting McBride's guilt for possessing methamphetamine. McBride's

11

purse was at her feet in the car. The officer found the methamphetamine inside the small makeup bag inside her purse, right next to her California identification card. Her only defense was that her boyfriend had two opportunities to put the methamphetamine in her bag, despite her testimony that she had no reason to suspect him to use methamphetamine. It is not reasonably probable the jury would have returned a not guilty verdict if that sentence had been omitted from the instruction. McBride was not prejudiced.

## II.

### SECOND AMENDMENT

McBride asserts section 11370.1 violates the Second and Fourteenth Amendments. She has two separate claims of unconstitutionality under *Bruen*: (1) California's concealed carry licensing scheme was deemed unconstitutional by *Bruen*, so section 11370.1 is also unconstitutional; and (2) section 11370.1 fails under *Bruen*'s clarified Second Amendment analysis. Neither claim has merit.

*A. Standard of review*

A reviewing court applies a de novo standard of review when interpreting a statute and determining its constitutionality because these are questions of law. (*People v. Alexander* (2023) 91 Cal.App.5th 469, 474.) We consider the statute's text alone, not its application to particular facts. (*Ibid.*)

*B. Background on Second Amendment Jurisprudence*

The Second Amendment to the United States Constitution provides, in relevant part, "[T]he right of the people to keep and bear Arms, shall not be infringed."

In *District of Columbia v. Heller* (2008) 554 U.S. 570 (*Heller*), the United States Supreme Court made clear that the Second Amendment protects the "right to possess and carry weapons in case of confrontation,"

(*Heller,* at p. 592), including "the right of law-abiding, responsible citizens to use arms in defense of hearth and home" (*id*. at p. 635). The court held the District of Columbia's law prohibiting handgun possession in the home violated the Second Amendment. Yet the court underscored the "individual right to keep and bear arms" (*Heller*, at p. 595) is not unlimited, noting it is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose" (*id*. at p. 626). The court assured that nothing in its opinion impinged "longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." (*Id*. at pp. 626–627.) The court noted the list of "presumptively lawful regulatory measures" was not exhaustive. (*Id*. at p. 627, fn. 26.)

The individual right to keep and bear arms under the Second Amendment was made applicable to the states in *McDonald v. Chicago* (2010) 561 U.S. 742 (*McDonald*) under the due process clause of the Fourteenth Amendment. (*McDonald,* at p. 750.) The court in *McDonald* similarly noted the incorporation "does not imperil every law regulating firearms." (*Id*. at p. 786)

Lower courts began applying a two-step test to analyze Second Amendment challenges, referred to as the post-*Heller* test. The test asked whether the challenged law prohibited conduct that fell within the scope of the Second Amendment and, if so, the court balanced the statute's objectives against the means employed. (*People v. Gonzalez* (2022) 75 Cal.App.5th 907, 912 (*Gonzalez*).)

The United States Supreme Court in *Bruen*, adopted the first step and rejected the second step in the post-*Heller* framework, finding means-end

13

balancing is incompatible with *Heller*. (*Bruen*, *supra*, 597 U.S. at pp. 23–24; *People v. Allen* (2023) 96 Cal.App.5th 573, 581 (*Allen*).) The court clarified the legal standard for Second Amendment challenges: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" (*Bruen*, *supra*, 597 U.S. at p. 24, quoting *Konigsberg v. State Bar* (1961) 366 U.S. 36, 49, fn. 10.) The *Bruen* court echoed *Heller*'s assurances that the protection exists only for law-abiding citizens. (*Bruen*, *supra*, 597 U.S. at p. 29; *Heller*, *supra*, 554 U.S. at p. 635.)

Applying this standard, the *Bruen* court struck down a New York firearm licensing statute that required individuals to prove "proper cause," or a special need for protection, to lawfully carry a concealed firearm outside the home for self-defense. (*Bruen*, *supra*, 597 U.S. at p. 12.) The court concluded the proper cause requirement violated the Second Amendment because a law-abiding individual carrying a firearm for self-defense is squarely covered in the Second Amendment's plain text, and the government failed to meet its burden in demonstrating a historical tradition in regulating firearms as such. (*Id*. at pp. 31–32.)

*C. Analysis—California's Licensing Scheme*

McBride first alleges *Bruen* made section 11370.1 (prohibiting possession of a controlled substance while armed with an operable firearm) unconstitutional on its face because California's concealed carry statutes mirrored New York's. McBride's interpretation of *Bruen* is overbroad and her claim unsupported.

14

McBride is correct that California's two concealed carry statutes were deemed unconstitutional by *Bruen*, but the Legislature promptly amended the statutes to comport with the Second Amendment. (Former Pen. Code, §§ 26150, subd. (a)(1)–(2), 26155, subd. (a)(1)–(2); both amended by Stats. 2023, ch. 249, §§ 10 & 11, respectively.) Further, California appellate courts have not broadly interpreted *Bruen* to mean that because the two statutes were once unconstitutional, California's entire firearm licensing scheme and ancillary statutes regulating firearm possession are similarly unconstitutional. (*People v. Mosqueda* (2023) 97 Cal.App.5th 399, 402 [finding the two unconstitutional statutes severable from California's licensing scheme].)

Even assuming arguendo that *Bruen* invalidated California's entire concealed carry scheme, such a ruling would be irrelevant to section 11370.1. In the trial court, McBride had standing to challenge Penal Code section 25400 before the jury acquitted her of that count because section 25400 is the relevant enforcement mechanism of California's once-unconstitutional licensing scheme. A criminal defendant "may demur to the accusatory pleading" when "the statutory provision alleged in the accusatory pleading is constitutionally invalid." (Pen. Code, § 1004, subd. (f).)

Contrasted here, McBride has no standing to contest section 11370.1's constitutionality because it is unrelated to California's licensing scheme. The constitutional claim is misplaced. Indeed, obtaining a concealed carry license has no bearing on possessing methamphetamine while armed with a loaded, operable firearm. The legislative intent for enacting section 11370.1 was not to ensure reasonable firearm regulations but was centered around stopping "'"the growing menace from a very deadly combination—illegal drugs and firearms."'" [Citation]." (*In re Ogea* (2004) 121 Cal.App.4th

15

974, 984.) The charge exists irrespective of the validity of a defendant's license. (*In re D.L.* (2023) 93 Cal.App.5th 144, 165.) McBride was not aggrieved by the previously unconstitutional statute.

D. *Analysis*—Bruen's *Second Amendment Framework*

Next, McBride asserts section 11370.1 violates the Second and Fourteenth Amendments under the framework set forth in *Bruen*, as applied to McBride. She asserts the trial court erred in denying her motion for a directed verdict because the prosecutor failed to establish McBride is not a law-abiding citizen or that the Nation has a historic tradition in regulating firearms. This contention misses the mark.

California appellate courts have held, and we agree, that section 11370.1 remains constitutional after *Bruen* because the constitution does not afford the right to possess methamphetamine while armed. Before *Bruen*, the Court of Appeal in *Gonzalez* rejected the claim that section 11370.1 violated the Second Amendment. (*Gonzalez, supra*, 75 Cal.App.5th at p. 910.) Applying the post-*Heller* test, the *Gonzalez* court concluded section 11370.1 was constitutional after the first step alone because the law did not burden constitutionally protected conduct; the Second Amendment does not "protect[] a right to carry a gun while simultaneously engaging in criminal conduct." (*Gonzalez*, at pp. 912–913.) Because the post-*Heller* test's first step and *Bruen*'s Second Amendment framework both begin by inquiring whether the prohibited conduct is covered by the Second Amendment's plain text, *Gonzalez*'s analysis "remains good law after *Bruen*." (*Allen, supra*, 96 Cal.App.5th at p. 581.)

Indeed, after *Bruen*, the Court of Appeal in *Allen* affirmed *Gonzalez*'s holding that section 11370.1 is constitutional at the first step of the analysis "because the firearm possession prohibition . . . does not affect

16

the individual right of "'law-abiding, responsible citizens'" to possess firearms [citations]." (*Allen, supra*, 96 Cal. App. 5th at p. 581.) We find the *Allen* and *Gonzalez* analyses persuasive.

Expounding further, our holding remains irrespective of whether McBride herself is deemed a law-abiding citizen. This does not mean anyone with a prior drug possession conviction necessarily loses their Second Amendment right to bear arms for self-defense purposes. Rather, the concurrent possession of methamphetamine and a firearm is unlawful per se and unprotected conduct not contemplated in the plain text of the Second Amendment. Accordingly, section 11370.1 survives *Bruen*.

III.

PITCHESS

Finally, McBride asks us to review the *Pitchess* proceedings in the trial court to ensure discoverable, nonprivileged records were not wrongfully withheld. (*Pitchess, supra*, 11 Cal.3d 531.) We find no error.

*A. Background*

McBride filed a *Pitchess* motion in the trial court. In support of McBride's *Pitchess* motion, counsel submitted a sealed declaration asserting the relevant good cause grounds for granting the motion. Counsel for the police department provided the court the relevant body worn camera video from the encounter to rebut McBride's assertions. Before watching the video, the court issued a tentative ruling to grant the motion and conduct the in camera hearing to determine whether responsive discovery must be turned over.

After watching the video, however, the trial court found the assertions in counsel's declaration unfounded. Instead of denying the motion, the court gave the police department's counsel and custodian of records the

17

option to voluntarily consent to the in camera records review to save time should a future appellate court conclude the court erred in denying the motion. The police department's custodian of records and counsel agreed to the in camera review. After reviewing both officers' personnel records, the court concluded no relevant records required disclosure.

*B. Law and Analysis*

A criminal defendant may compel disclosure of an arresting officer's privileged personnel records through a *Pitchess* motion if "relevant to the defendant's ability to defend against a criminal charge." (*Association for Los Angeles Deputy Sheriffs v. Superior Court* (2019) 8 Cal.5th 28, 40–41.) To obtain such records, the defendant must file a written motion and notice to the governmental agency in custody of the records describing "the type of records or information sought" (Evid. Code, § 1043, subds. (a), (b)(2)) and include "[a]ffidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation" (*id.*, subd. (b)(3)).

The "good cause" showing in the motion's supporting declaration under Evidence Code section 1043 must "describe a factual scenario supporting the claimed officer misconduct" which "may consist of a denial of the facts asserted in the police report." (*Warrick v. Superior Court.* (2005) 35 Cal.4th 1011, 1024–1025.) Though the trial court "does not determine whether a defendant's version of events . . . is persuasive," the version of events must nevertheless be plausible. (*Id.*, at p. 1026.) The "plausible scenario of officer misconduct is one that might or could have occurred." (*Ibid.*)

The trial court has broad discretion in determining whether a defendant established good cause, and "a reviewing court should reverse the court's determinations only on a showing that the court abused this discretion." (*Haggerty v. Superior Court* (2004) 117 Cal.App.4th 1079, 1086.) Where the trial court finds the defendant established good cause, the court then conducts an in camera hearing reviewing the responsive records brought by the custodian of records and determines whether any records are nonprivileged and discoverable under *Pitchess* and its progeny. (Evid. Code, § 1045.)

We reviewed McBride's motion, her counsel's sealed declaration, and the sealed reporter's transcript from the *Pitchess* motion hearing and subsequent in camera hearing. McBride confided in her counsel specific facts about the case, which counsel declared upon information and belief, that conflicted with the police report. However, each fact McBride asserted was dispelled by uncontroverted statements in the officer's body worn camera video. Absent the few asserted conflicts, McBride had no other allegations of plausible scenarios of police misconduct to merit an in camera review. While the trial court and this court are not to determine whether McBride's assertions are persuasive, they certainly must be plausible.

Because there was no plausible justification to grant the motion and conduct an in camera review in the first place, we need not review the trial court's findings during the in camera hearing. Accordingly, the court did not abuse its discretion and correctly concluded there was no plausible justification to grant the motion.

19

## DISPOSITION

The judgment is affirmed.


                                    O'LEARY, P. J.

WE CONCUR:


SANCHEZ, J.


MOTOIKE, J.